**TEXAS MUTUAL INSURANCE CO., Appellant,**

v.

**Paula LEDBETTER, as Representative of the Estate of Charles Wade Ledbetter, Appellee.**

**No. 11–05–00098–CV.**

Court of Appeals of Texas, Eastland.

June 1, 2006.

Rehearing Overruled June 29, 2006.

Blake B. Thompson, Michael L. Byrd, Byrd & Associates, Lubbock, for appellant.

David C. Hall, Lance Hall, Hall Law Office, Sweetwater, Burt L. Burnett, Burnett & Burke, LLP, Abilene, for appellee.

Anthony Pettitt, Gwinn & Roby, Fort Worth, Joshua T. Kutchin, Fanning, Harper & Martinson, Dallas, for other persons interested in case.

Panel consists of: WRIGHT, C.J., and McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

This is a wrongful-death action arising out of a work-related accident. The trial court approved a settlement agreement between Paula Ledbetter, as Representative of the Estate of Charles Wade Ledbetter; Randy Nelms d/b/a Nelms Electric; and Williams Scotsman, Inc. and struck Texas Mutual Insurance Company's petition in intervention. We reverse and remand.

### Background Facts

Charles Wade Ledbetter was fatally electrocuted while in the course and scope of his employment for Key City Septic Service, Inc. Paula Ledbetter, individually, as representative of the Estate of Charles Wade Ledbetter, and as next friend of Dustin Wade Ledbetter, a minor; Tonja Ledbetter; and Jamie Ledbetter filed a wrongful-death action against Randy Nelms d/b/a Nelms Electric and Williams Scotsman, Inc. claiming that their negligence proximately caused Charles's death. The parties reached a settlement agreement. Because Charles's son Dustin was a minor, the settlement agreement was presented to the trial court for approval.

Texas Mutual was Key City's workers' compensation carrier. Texas Mutual filed a petition in intervention on the day of the settlement hearing. Texas Mutual claimed that it had paid medical, funeral, and indemnity benefits because of Charles's accident and requested judgment for reimbursement of those payments.

At the beginning of the hearing, appellee's trial counsel announced that all claims, save those asserted by the estate, were being nonsuited. Appellee's trial counsel then asked the trial court to strike Texas Mutual's petition, stating:

> Before we even filed the lawsuit, this workers' comp carrier had a person present at the on-site inspections. As soon as I filed the lawsuit and sent them a copy of the petition they have done nothing in this case until this morning when they filed a petition; therefore, we would move the Court to strike their petition of intervention.

The trial court took the request under advisement, and the hearing proceeded. Paula, Charles's widow, testified that the total amount of the settlement was 4.5 million; that all of the settlement monies were being paid to the estate for her husband's conscious pain and suffering; and that the net payment to the estate was $2,388,545.40. Paula also testified that she and her son were receiving workers' compensation benefits. On cross, she testified that these benefits were approximately $1,258 per month.

Paula acknowledged that she and her family were releasing all claims that they might have against the defendants. There was some reference to structuring the settlement payments, but she provided no detail and did not testify that any portion of the settlement was being held in trust for the benefit of her minor son.

The only evidence of Charles's conscious pain and suffering came from Paula who testified on direct:

Q. [I]s it your understanding that at least the facts in this case are your husband was electrocuted by 110 volts of electricity?

A. Yes, sir.

Q. And that he—there were markings on his body where maybe he could not get away from this metal strap that he was in contact with?

. . . .

A. Yes, sir.

. . . .

Q. And that he may have suffered in that regard?

. . . .

A. Yes, sir.

Texas Mutual's attorney asked Paula if she was aware of any evidence that her husband suffered any conscious pain and suffering. Appellee's trial counsel objected:

I'm going to object to that as being multifarious and unfair. It's calculated to lead to a response that—you know, this is a prove up hearing for a minor settlement, and he's asking her these things in painful areas.

The trial court sustained the objection even though the minor's claims had been previously nonsuited and all of the settle-

ment proceeds were being paid to the estate for conscious pain and suffering.

When appellee's trial counsel rested, he renewed his motion to strike, stating:

[I]n summary, I believe there is no evidence of what, if any, has been paid by comp. I don't think they're entitled to it because it's—all the money is being paid to the Estate. The individual claims were dismissed, and so we would ask that Texas Mutual, or whatever their name is, not receive anything and not be able to take any credit for any future payments.

Texas Mutual was given the opportunity to call witnesses, and its counsel tried to call himself. Appellee's trial counsel objected because Texas Mutual's attorney had not been timely identified as a witness per the trial court's scheduling order.[1] That objection was sustained. Texas Mutual then made an offer of proof which included the following letter dated December 1, 2004, from appellee's trial counsel to Texas Mutual:

Dear Mr. Watson:

As we discussed over the telephone today, the above-referenced case has been resolved between the parties provided the Court approves of the settlement terms. It is my understanding that you have a copy of our pleadings in the suit which is pending in Jones County, Texas. A settlement hearing is scheduled for 9:00 a.m., December 14, 2004, in the 259th Judicial District Courtroom in Anson, Texas. It is my further understanding that your company has paid $27,942.00 in benefits, to date.

As we discussed, due to the nature of the settlement and the value of future

---

1. The scheduling order required a party seeking relief to designate experts and provide

reports by August 31, 2004.

benefits to which Paula Ledbetter and her ten year old son, Dustin Ledbetter, are entitled, I strongly encourage your company to intervene, or at least have an attorney appear at the hearing. The exact amounts and time of the payments from the potential settlement have not been determined at this time. However, I can assure you that Dustin Ledbetter will not receive any money until he is of the age of majority.

Texas Mutual's counsel testified during the offer of proof that as of December 1, 2004, Texas Mutual had paid $27,942 for indemnity benefits, medical bills, and funeral expenses. Following the conclusion of all evidence, the trial court struck Texas Mutual's petition. The court ordered Texas Mutual to remain a party, found that it was not entitled to reimbursement, and ordered it to continue making benefit payments without seeking any credit for money reflected in the settlement agreement. The trial court signed a judgment on December 14, 2004, which approved the parties' settlement. Texas Mutual timely requested findings of fact and conclusions of law and timely filed a notice of past due findings. The trial court did not timely prepare findings or conclusions, and both parties submitted their briefs. Subsequently, on March 9, 2006, the trial court forwarded findings and conclusions to this court.[2]

### Issues

Texas Mutual challenges the trial court's judgment with four issues. Texas Mutual contends that the trial court abused its discretion by striking the petition in intervention, erred when it granted plaintiffs' nonsuit, erred when it denied Texas Mutual's statutory right of subrogation, and erred when it ordered Texas Mutual to continue making benefit payments. Appellee asserts three cross-issues. She asks this court to strike an affidavit Texas Mutual attached to its brief; and she challenges the standard of review for Texas Mutual's second, third, and fourth issues.[3]

### Is the Affidavit of Texas Mutual's Representative Properly Before this Court?

■ Texas Mutual's representative, David Watson, prepared an affidavit dated June 14, 2005—exactly three months after Texas Mutual's notice of appeal—which purports to provide evidence of Texas Mutual's payments. Watson's affidavit was attached as an exhibit to Texas Mutual's brief. Appellee asks us to strike Watson's affidavit because it attempts to inject facts which are outside the record.

Appellee's point is well taken. Our review is limited to the record. *See Guajardo v. Conwell*, 46 S.W.3d 862, 864 (Tex.2001)(refusing to consider order which was not included in the clerk's record); *Parmer v. State*, 38 S.W.3d 661, 667 (Tex.App.-Austin 2000, pet. ref'd)(refusing to consider counsel's affidavit filed after motion for new trial was overruled by operation of law). Because Watson's affidavit was not before the trial court, we may

---

**2.** No party has asked this court to allow the late-filed findings and conclusions. We will, however, exercise our discretion to consider them for the purposes of determining why the trial court struck Texas Mutual's petition in intervention.

**3.** Appellee asserts that the standard of review for Texas Mutual's third and fourth issues, which challenge the trial court's decision to deny Texas Mutual's right of subrogation and order it to continue making benefit payments, is legal and factual sufficiency. Appellee asserts in her third issue that the standard of review for Texas Mutual's challenge to the trial court's decision to grant plaintiffs' motion for nonsuit is abuse of discretion.

not consider it for any purpose. Appellee's first cross-issue is sustained.

### Did the Trial Court Abuse its Discretion by Striking Texas Mutual's Petition in Intervention?

Intervention is governed by TEX.R. CIV. P. 60. This rule provides that "[a]ny party may intervene by filing a pleading, subject to being stricken by the court for sufficient cause on the motion of any party." Courts have considerable discretion when determining whether an intervention should be stricken. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990). The Texas Supreme Court, however, has said this discretion is abused if: (1) the intervenor establishes that it could have brought suit in its own right; (2) the intervention will not complicate the case by an excessive multiplication of the issues; and (3) the intervention is almost essential to effectively protect the intervenor's interest. *Id.; see also Caprock Inv. Corp. v. FDIC*, 17 S.W.3d 707, 710–11 (Tex.App.-Eastland 2000, pet. denied)(trial court abused its discretion by striking petition in intervention which satisfied all three elements of *Guaranty Federal* ).

Texas Mutual contends that the trial court abused its discretion because Texas Mutual had the right to file a separate suit in its own name, because the intervention did not complicate the case, and because intervention was necessary to prevent payment to appellee before it recouped its subrogation interest. Appellee answers that the trial court properly exercised its discretion and that, even if the trial court

erred, any error was harmless because Texas Mutual's petition was struck after it was given the opportunity to present evidence. Because Texas Mutual was ordered to remain a party, appellee suggests that the trial court may have misspoken when it said Texas Mutual's petition was being struck and that it may have meant to say that Texas Mutual's plea was denied because of insufficient evidence. The trial court's findings and conclusions clarify this by indicating that the petition was in fact struck.

The trial court found that Texas Mutual's petition was inadequate as a matter of law because it failed to specify:

- the amounts paid for funeral expenses or the recipient of those payments;
- the amounts paid for indemnity benefits;
- the recipient of indemnity benefit payments;
- the amount of death benefit payments; and
- the recipient of death benefit payments.

The trial court also concluded that Texas Mutual's petition was unreliable as a matter of law and that Texas Mutual failed to comply with TEX.R. CIV. P. 95.

Rule 95 provides that payment is an affirmative defense. This defense must be specifically pleaded and is not raised by a general denial. *Sw. Fire & Cas. Co. v. Larue*, 367 S.W.2d 162, 163 (Tex.1963). We have found no case applying this rule to a petition in intervention seeking affirmative relief.[4] The rule's language does

---

4. The rule's language indicates that it applies when a defendant contends it does not owe a plaintiff's claim in whole or in part because of prior payments. *See, e.g., Castle Tex. Prod. Ltd. P'ship v. Long Trusts*, 134 S.W.3d 267, 276 (Tex.App.-Tyler 2003, pet. denied). This construction is also supported by the case appellee cites for the proposition that Rule 95 applied to Texas Mutual's petition. Appellee cites *Twin City Fire Ins. Co. v. Cortez*, 562 S.W.2d 940, 945 (Tex.Civ.App.-Amarillo), *rev'd on other grounds*, 576 S.W.2d 786 (Tex. 1978). *Twin City* was not an intervention case, but an action for compensation benefits

not support such an application, and we find that the trial court erred when it concluded Rule 95 applied to Texas Mutual's petition in intervention. The trial court's statement that the petition was unreliable as a matter of law does not provide an independent basis for striking the petition. We assume that this merely restates the trial court's other findings.

■ The form and content of a petition in intervention is controlled by the general rules of pleading. TEX.R. CIV. P. 61; 1 ROY W. MCDONALD & ELAINE A. GRAFTON CARLSON, TEXAS CIVIL PRACTICE § 5:82 (2d ed.2004). Texas follows a notice practice. A petition provides sufficient notice if it gives the defendant fair notice of the facts relied upon, enabling it to prepare a defense. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex.2000); *see also Coffey v. Johnson*, 142 S.W.3d 414, 417 (Tex.App.-Eastland 2004, no pet.)(the test for fair notice is whether an opposing attorney of reasonable competence, with the pleadings before him, can determine the nature of the controversy and the testimony that would probably be relevant).

■ The fair notice requirement does not require the pleader to plead evidentiary matters with meticulous particularity. *State Fid. Mortgage Co. v. Varner*, 740 S.W.2d 477, 480 (Tex.App.-Houston [1st Dist.] 1987, writ denied). A party seeking relief must state enough facts to inform the defendant of the nature of the claim. The pleading does not need to include the evidence on which the party intends to rely. *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494–95 (Tex.1988).

The intervenor's pleading should, however, include the facts which establish a justiciable interest. *H. Tebbs, Inc. v. Silver Eagle Distribs., Inc.*, 797 S.W.2d 80, 84 (Tex. App.-Austin 1990, no pet.).

Texas Mutual alleged in its petition in intervention that it was Key City's workers' compensation carrier, that it had paid benefits to Charles's spouse and son, and that its payments as of the filing of the petition in intervention were in excess of $28,000. Texas Mutual alleged that it was subrogated to the rights of Charles's spouse and son for the full amount of all past and future payments; and it sought reimbursement from the defendants, Nelms Electric and Scotsman, Inc. Finally, Texas Mutual adopted by reference the allegations of appellee's live pleading.

Texas Mutual's petition satisfied the Texas Rules of Civil Procedure and provided appellee fair notice. The trial court's holding that the petition was inadequate because it failed to provide information on specific payments is inconsistent with Texas law. To the extent the trial court required Texas Mutual to specifically identify and describe each past payment, it improperly required Texas Mutual to include the evidence upon which it intended to rely. *Cf. Paramount Pipe*, 749 S.W.2d at 494–95. To the extent the trial court required Texas Mutual to provide this information for future payments, it violated TEX.R. CIV. P. 47(b) because Texas Mutual's future obligation is unliquidated.[5] *See also Capitol Brick v. Fleming Mfg. Co.*, 722 S.W.2d 399, 401 (Tex.1986)(Rule 47 precludes a party, except in response to a

filed by the employee against the carrier. The carrier claimed its liability was limited by prior payments to the employee. The court held that Rule 95 applied to this defense.

5. A workers' compensation carrier is required to pay death benefits to an eligible spouse for life or until remarriage. It is required to pay benefits to an eligible minor child until the child turns eighteen or, if the child is a full-time student, until the earliest of the child ceasing to be a full-time student, turning twenty-five, or dying. TEX. LAB.CODE ANN. § 408.183 (Vernon 2006).

special exception, from pleading unliquidated damages in a specific amount).

We are aware of no case requiring an intervenor seeking reimbursement of benefits previously paid to provide the level of detail on individual payments required by the trial court.[6] Moreover, such a requirement is inconsistent with Tex.R. Civ. P. 45, which requires courts to construe pleadings so as to do substantial justice.

Texas Mutual established a justiciable interest. The trial court did not find that Texas Mutual's intervention would complicate the case by an excessive multiplication of the issues or that it would delay the resolution of this matter. Intervention was necessary for Texas Mutual to protect its rights, as is confirmed by the trial court's judgment denying it any recovery but ordering it to continue paying future benefits. Consequently, we find that the trial court abused its discretion when it struck Texas Mutual's petition. Texas Mutual's first issue is sustained. Because the trial court struck Texas Mutual's petition, Texas Mutual was no longer a party, and it was error for the court to consider the sufficiency of Texas Mutual's proof. We reverse the trial court's judgment and remand for further proceedings. This holding makes it unnecessary for us to address Texas Mutual's third issue and appellee's second cross-issue to the extent

it addressed the appropriate standard of review for this issue.

*Did the Trial Court Err When it Granted the Plaintiffs' Motion to Nonsuit All Claims Save Those of the Estate?*

■ Texas Mutual alleges that the trial court erred when it allowed the plaintiffs, save the estate, to nonsuit their claims because this enabled the plaintiffs to circumvent Texas Mutual's statutory right of subrogation. Appellee contends that there is no error because the nonsuit did not affect Texas Mutual's right to seek reimbursement.

Appellee is correct. A plaintiff has the right to nonsuit its claims at any time before it introduces its evidence. Tex.R. Civ. P. 162. Court approval is not required. Consequently, the trial court did not err.[7] Texas Mutual's characterization of the impact of that nonsuit is also incorrect. Plaintiffs' nonsuit did not eliminate Texas Mutual's right to seek reimbursement from the remaining parties or to bring a separate action against any of the former plaintiffs. Texas Mutual's second issue is overruled.

We note that the trial court's final judgment purports to adjudicate the claims of nonparties.[8] This is improper. When plaintiffs nonsuited their claims, they were no longer parties and the trial court lacked jurisdiction to enter a judgment for or

---

6. Tex.R. Civ. P. 56 requires specificity when pleading special damages, such as consequential damages; but Texas Mutual's claim is not subject to Rule 56 because it was not seeking special damages. *Cf. Naegeli Transp. v. Gulf Electroquip, Inc.*, 853 S.W.2d 737, 739 (Tex. App.-Houston [14th Dist.] 1993, writ denied)(consequential damages are special damages and must be pleaded and proved separately).

7. This holding moots appellee's third issue which asks us to apply an abuse of discretion review to this question.

8. For example, the judgment provides that the settlement agreement is in the best interest of the minor child, and it references a report from the child's attorney ad litem. That report is not part of the record, and the minor child's claims were nonsuited before the hearing. The attorney ad litem had no further role after the nonsuit, and the court lacked authority to adjudicate the minor's rights.

against them. The Estate was the only remaining plaintiff. When the trial court reconsiders this case after remand, any judgment should be limited to the parties before the court.

*Did the Trial Court Err When it Ordered Texas Mutual to Continue Making Future Indemnity Payments?*

■ The trial court ordered Texas Mutual to continue making indemnity payments and forbade it from making any claim for reimbursement for monies reflected in the settlement. Appellee contends that Texas Mutual made a voluntary decision to appear at the settlement hearing as a party and, therefore, is bound by the same rules applicable to the other parties. Appellee contends further that res judicata and collateral estoppel prevent Texas Mutual from recovering any of the settlement proceeds, past or future, and, therefore, that the trial court did not err.

Appellee is correct that Texas Mutual subjected itself to the trial court's jurisdiction and the rules of civil procedure when it filed a petition in intervention. Appellee is incorrect that res judicata and collateral estoppel prevent Texas Mutual from taking any further action in the future to protect its interests or that the trial court properly adjudicated Texas Mutual's obligations to nonparties.

■ Res judicata requires (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Mayes v. Stewart*, 11 S.W.3d 440, 449 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). Because we are reversing the trial court's judgment, it has

not become final. Moreover, all plaintiffs, save the estate, nonsuited their claims. With regard to indemnity payments, there is no privity between the nonsuiting plaintiffs and any other party. Thus, res judicata does not prevent Texas Mutual from asserting a future claim against them for reimbursement of indemnity payments.

■ Nor does collateral estoppel apply. Collateral estoppel bars relitigation of any ultimate issue of fact actually litigated and essential to the final judgment. *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 798 (Tex.1992). We have previously held that the trial court erred by striking Texas Mutual's petition and are reversing and remanding the trial court's judgment for further proceedings. Consequently, there is no final judgment.

■ The trial court also erred because it improperly denied Texas Mutual its statutory right of reimbursement. Texas law is clear that a compensation carrier has a right of reimbursement from the first monies paid.[9] That right must not be compromised by other parties; and the trial court may not enter a judgment which arbitrarily compromises the carrier's right to subrogation by structuring the award so that a non-beneficiary recovers, but a beneficiary does not. *U.S. Fire Ins. Co. v. Hernandez*, 918 S.W.2d 576, 579 (Tex. App.-Corpus Christi 1996, writ denied). When the allocation of settlement proceeds impacts a carrier's right of reimbursement, trial courts must allocate the proceeds based upon the relative merits and worth of the claims involved. *See id.*

■ The trial court allocated 100% of the settlement to the decedent's conscious pain and suffering, even though there was little to no evidence that the decedent suffered.[10] Conversely, the trial court was

---

9. Tex. Lab.Code Ann. §§ 417.001–.002 (Vernon 2006).

10. Appellee suggests one possible reason for the nonsuit was federal taxation consider-

presented with clear and uncontroverted evidence establishing other forms of damage. Plaintiffs alleged claims for pecuniary loss, lost services, mental anguish, lost inheritance, and lost consortium. Paula testified that, at the time of her husband's death, she was not working outside the home and that she and her son depended upon her husband for support. The record evidences no marital or family troubles or other reason to doubt the legitimacy of the nonsuited claims. Consequently, the record conclusively establishes that there were several elements of damage besides the decedent's conscious pain and suffering. Trial courts cannot apportion settlement proceeds in a manner that circumvents the carrier's right of subrogation. *Tex. Workers' Comp. Ins. Fund v. Travis*, 912 S.W.2d 895, 898–99 (Tex.App.-Fort Worth 1995, no writ). The trial court's decision to apportion 100% of the proceeds to the decedent's conscious pain and suffering, knowing that all other claims were being waived as part of the settlement,[11] and to deny Texas Mutual any future right of reimbursement was erroneous as a matter of law. *See id.* Texas Mutual's fourth issue is sustained. Appellee's second cross-issue is overruled.

ations. In an appropriate case, that may be a relevant inquiry, but no evidence was presented to the trial court on the federal tax impact of this settlement. We can take judicial notice that pain and suffering is not taxable as income, but we can also take judicial notice of the potential federal estate tax consequences of this settlement. By allocating approximately 2.3 million to the estate, a taxable estate for estate tax purposes was created and a potential tax liability, after deducting the 1.0 million unified credit, of approximately $448,300 was incurred. *See* 26 U.S.C. §§ 2001(c)(1), 2010(c). Consequently, we cannot say that the potential tax consequences of this allocation justify the trial court's decision.

*Conclusion*

The trial court's judgment is reversed, and this case is remanded for further proceedings.

11. The trial court's allocation also causes concern because the minor child's representative waived the minor's claims even though no portion of the settlement was placed in trust for the minor's benefit. The minor's claims were originally filed by his mother as next friend. The trial court appointed an attorney ad litem because of the potential conflict of interest between Paula and her minor son. Charles died intestate. Paula was appointed administratrix of the estate. Payment of 100% of the settlement proceeds to the estate did not resolve the conflict. Regardless of whether the minor is represented by a next friend or ad litem, the minor remains the real party and is under the court's protection. *Mo.-Kan.-Tex. Ry. Co. of Tex. v. Pluto*, 138 Tex. 1, 156 S.W.2d 265, 268 (1941).