TEXAS MUTUAL INSURANCE
COMPANY, Petitioner,

v.

Paula LEDBETTER, Representative of the Estate of Charles Wade Ledbetter, Individually and as Next Friend of Dustin Wade Ledbetter, a Minor, and Tonja Ledbetter and Jamie Ledbetter, Individually, Respondents.

No. 06–0814.

Supreme Court of Texas.

Argued Nov. 15, 2007.

Opinion Delivered April 4, 2008.

R. Bruce Moon, Brian J. Brandstetter, Brackett & Ellis, P.C., Fort Worth, TX, for Randy Nelms.

Joshua T. Kutchin, Robert H. Fugate, Fanning, Harper & Martinson, P.C., Dallas, TX, for Williams Scotsman, Inc.

William Lowe Burke III, Burnett & Burke, L.L.P., Abilene, TX, for D.L., Minor.

Justice BRISTER delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice O'NEILL, Justice WAINWRIGHT, Justice MEDINA, Justice GREEN, and Justice WILLETT joined, and in which Justice JOHNSON joined as to Parts I through III and Part V.

■ For decades, Texas law has required the first money recovered by an injured worker from a tortfeasor to go to the worker's compensation carrier, and until the carrier "is paid in full the employee or his representatives have no right to any funds."[1] In this case, a $4.5 million settlement was structured so the plaintiffs and their attorney got all the funds and the compensation carrier got nothing. The plaintiffs argue this result is harmless because the carrier can sue the defendants (they do not volunteer themselves) to get the money back. That might give the carrier second or third money, but not first money. As the statute guarantees the carrier first money, we reverse.

### I. Background

Charles Ledbetter was electrocuted in August of 2003 while working on a job for his employer. His worker's compensation

Blake Bradford Thompson, The Thompson Law Office, Stephenville, Michael L. Byrd, Byrd & Associates, Lubbock, Mary Barrow Nichols, Jackie M. Kenyon, Texas Mutual Insurance Company, Mary A. Keeney, Graves Dougherty Hearon & Moody, P.C., Austin, TX, for Petitioner.

David C. Hall, Lance Hall, Sweetwater, Burt L. Burnett, Burnett & Burke, L.L.P., Abilene, for Respondents.

1. *Argonaut Ins. Co. v. Baker,* 87 S.W.3d 526, 530 (Tex.2002) ("For decades, the law has been that under the Workers' Compensation Act's subrogation provision the first money paid to or recovered by the employee or his representatives belongs to the compensation carrier paying the compensation, and until it is paid in full the employee or his representatives have no right to any funds.") (internal quotations and punctuation omitted) (citing *Fort Worth Lloyds v. Haygood,* 151 Tex. 149, 246 S.W.2d 865, 869 (1952)).

carrier, Texas Mutual Insurance Company, paid $6,000 in funeral expenses and began paying $1,258 monthly death benefits to his widow and minor son.

His widow (individually, as administrator of his estate, and as next friend of his minor son) and two adult daughters filed suit in January 2004 against third parties alleged to be responsible for his death.[2] The case settled for $4.5 million in November 2004, two weeks before the trial setting. As the settlement involved a minor, the trial court had to approve it.[3] Notice of the settlement was sent to Texas Mutual on December 1, 2004, along with notice of the hearing set on December 14th.

Before the hearing began, Texas Mutual filed a petition in intervention seeking subrogation for past and future benefit payments. At the start of the hearing (indeed before the trial judge was able to call the case), the plaintiffs' attorney nonsuited all claims except those of Ledbetter's estate. The trial court granted the nonsuit over the carrier's objection that doing so would subvert its subrogation rights.

The plaintiffs then announced that the $4.5 million settlement would be allocated $2,388,545.40 to Ledbetter's estate (for pain and suffering before his death), $2,063,912.60 to their attorney, $47,542.00 to the ad litem, and nothing to the widow, the minor child, the adult daughters, or the compensation carrier. Ledbetter died intestate, so his widow was entitled to one-third of the estate and his children to the remainder.[4] But there was no evidence regarding expenses or expected distributions from Ledbetter's estate, or any testimony regarding how this settlement benefitted the minor. To the contrary, the only reasons the ad litem stated for approving the settlement were (1) the minor would get nothing until he was 18 or older, and (2) his mother "understands her obligation to her child" in the meantime. Nor did the plaintiffs' attorney explain how the minor was to be protected, instead focusing his questions on protecting himself.[5]

The carrier's attorney attempted to ascertain what the estate would do with its money and whether the Ledbetters had any other income, but the plaintiffs' attorney objected and the trial court sustained those objections. The carrier also tried to prove up its right to subrogation, but the trial court again sustained the plaintiffs' attorney's objection that "[f]or him to show up today and file his petition and think he needs to start calling lawyers and everybody else as witnesses to prove their subrogation interest, if they have one, is ridiculous."

At the end of the short hearing, the trial court approved the settlement—even though the nonsuit and dismissal purportedly meant it no longer involved a minor. The final judgment ordered five insurers to pay annuities to six different persons or entities, none of whom were Ledbetter's family members;[6] in an attachment, Ledbetter's widow "acknowledged" that she would direct payment from some of those

---

**2.** Those parties are Randy Nelms, d/b/a Nelms Electric and Williams Scotsman, Inc. Although neither is party to this appeal, the latter has filed an amicus brief supporting Texas Mutual's petition.

**3.** *See* Tex.R. Civ. P. 44(2).

**4.** *See* Tex. Prob.Code § 38(b)(1).

**5.** Specifically, the Ledbetters' attorney asked his clients to admit that he had made no

representations to them about the taxation or worker's compensation implications of the settlement, and to admit they were satisfied with his handling of the case.

**6.** The judgment (which incorporated an attachment) ordered immediate payments to be made by Allstate Life Insurance Company, Metropolitan Life Insurance Company, The Travelers Insurance Company, Zurich Insurance Company, and an entity listed as "AXIS" without other appellation. It ordered pay-

annuities to family members, but the attachment also contained a provision allowing her to "change the payment directions" within 30 days of the judgment. The trial court also struck the carrier's intervention but ordered it to remain a party (though it is unclear to what), and ordered the carrier to keep paying Ledbetter's widow and son future benefits.

The court of appeals held the trial court erred in striking the carrier's intervention,[7] and in allocating 100 percent of the settlement to the estate, citing the limited evidence that Charles suffered pain before his death and the undisputed evidence that his widow and son suffered the loss of their sole means of support.[8] But the court of appeals declined to set aside the trial court's nonsuit and reinstate Ledbetter's wife and son as parties.[9] Both sides appeal, the plaintiffs arguing the court of appeals went too far, and the carrier arguing it did not go far enough.

## II. The Carrier's Right to First Money

■ The law governing this settlement is simple: the compensation carrier gets the first money a worker receives from a tortfeasor.[10] First-money reimbursement is crucial to the worker's compensation system because it reduces costs for carriers (and thus employers, and thus the public) and prevents double recovery by workers.[11]

If an employee is killed in the course and scope of employment, the compensation carrier must pay benefits to the worker's legal beneficiaries (usually a spouse or minor children).[12] If the death was caused by a third party, the beneficiaries may bring wrongful death and survival claims,[13] and a carrier who pays benefits may do the same in the name of the beneficiaries or the employee.[14] If there is a recovery, "rather than the employee owning the money and being forced to disgorge it, the carrier is first entitled to the money up to the total amount of benefits it has paid," [15] according to the following statutory plan:

- any net recovery up to the amount of past benefits goes to the carrier; [16]
- any recovery greater than past benefits but less than all future benefits

---

ments to be made to NABCO Assignment Ltd., The Travelers Life & Annuity Company, Tower Resources Group Inc., Burt Burnett (the plaintiffs' counsel), W.L. Burke III (the ad litem), and the estate of Charles Ledbetter.

7. 192 S.W.3d 912, 920.

8. *Id.* at 922.

9. *Id.* at 920.

10. *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 649 (Tex.2007) (stating that "Texas workers' compensation law specifically embraces an insurer's first-money right of subrogation"); *Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 412 (Tex.2007) ("If a worker obtains a tort recovery, the compensation carrier is reimbursed first...."); *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 530 (Tex.2002); *Fort Worth*

*Lloyds v. Haygood*, 151 Tex. 149, 246 S.W.2d 865, 869 (1952).

11. *Capitol Aggregates, Inc. v. Great Am. Ins. Co.*, 408 S.W.2d 922, 924 (Tex.1966); *Haygood*, 246 S.W.2d at 868.

12. Tex. Lab.Code §§ 408.181, 408.182; *see also id.* § 408.182(d) ("If there is no eligible spouse, no eligible child, and no eligible grandchild, the death benefits shall be paid in equal shares to surviving dependents of the deceased employee who are parents, stepparents, siblings, or grandparents of the deceased.").

13. *Id.* § 417.001(a).

14. *Id.* § 417.001(b).

15. *Argonaut Ins.*, 87 S.W.3d at 530.

16. Tex. Lab.Code § 417.002(a).

goes to the beneficiary, but releases the carrier from future payments to that extent; [17]

- any recovery greater than past and future benefits combined goes to the beneficiary.[18]

■ There is nothing discretionary about this statute; a carrier's right to reimbursement is mandatory. In the words of the statute:

> The net amount recovered by a claimant in a third-party action *shall be used* to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury.[19]

Thus, until a carrier is reimbursed in full, "the employee or his representatives have no right to any of such funds." [20]

Obviously, the carrier did not get the first money when the trial court denied its subrogation claim and distributed the entire settlement to the Ledbetter estate, the plaintiffs' attorney, and the ad litem. The court of appeals correctly held the trial court abused its discretion in doing so.

### III. The Carrier's Right to Intervene

The court of appeals was also correct that the trial court erred in striking the carrier's intervention.

■ There is no deadline for intervention in the Texas Rules of Civil Proce-

dure.[21] Generally one cannot intervene after final judgment.[22] But when a subrogee's interest has been adequately represented and then suddenly abandoned by someone else, it can intervene even after judgment or on appeal so long as there is neither unnecessary delay nor prejudice to the existing parties.[23]

■ Here, the carrier had no reason to intervene earlier, as its claim and the plaintiffs' were identical insofar as recovering from any tortfeasors. The compensation statute explicitly allows attorneys to represent workers and their carriers simultaneously, and to collect fees out of the carriers' subrogation claims.[24] The draft judgment the plaintiffs filed with the trial court included a paragraph granting the carrier subrogation after deducting one-third as an attorney's fee. Not until the plaintiffs nonsuited and asked the trial court to award the carrier nothing did it have any reason to intervene to protect its claim.

Nor did the carrier's intervention cause any delay or prejudice, as the underlying case had already settled. The intervention would not have delayed the settlement a moment had the plaintiffs honestly admitted the benefits they got and agreed to the carrier's right to first money as Texas law requires.

---

17. *Id.* § 417.002(b).

18. *Id.* § 417.002(c).

19. *Id.* § 417.002(a) (emphasis added); Tex. Gov't Code § 311.016 (providing that unless the context requires otherwise, " '[s]hall' imposes a duty").

20. *Capitol Aggregates, Inc. v. Great Am. Ins. Co.*, 408 S.W.2d 922, 923 (Tex.1966); *accord, Argonaut Ins.*, 87 S.W.3d at 530; *Fort Worth Lloyds v. Haygood*, 151 Tex. 149, 246 S.W.2d 865, 869 (1952).

21. *See* Tex. R. Civ. P. 60.

22. *Citizens State Bank of Sealy, Tex. v. Caney Invs.*, 746 S.W.2d 477, 478 (Tex.1988).

23. *In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 725–26 (Tex.2006) (citing *Ross v. Marshall*, 426 F.3d 745, 761 (5th Cir.2005)).

24. *See* Tex. Lab.Code § 417.003.

In their response and cross-petition, the plaintiffs have dropped their claim that the carrier's intervention was filed too late, now conceding it had no legal duty to intervene any earlier. Instead, they argue subrogation should be denied because the carrier neither pleaded nor proved the exact amount of benefits it paid.

There is no requirement that a carrier plead the precise amount of reimbursement it seeks. Such a requirement would often be impractical, requiring an amended petition every week as more benefits are paid. Oddly, the plaintiffs claim Rule 95 imposes such a requirement, but that rule governs payment as an affirmative *defense*, not payment as an affirmative *claim*.[25] Nor was the carrier's petition governed by the special requirements for sworn accounts,[26] as the carrier had no account with the tortfeasors. All the carrier's petition had to do was give fair notice of that claim,[27] not the specific dollar amount sought.

Nor was the carrier required to prove up its whole case the day it intervened. The intervention here was timely (as noted above), and litigants cannot be put to trial summarily.[28] The plaintiffs point out correctly that a carrier must prove its case at trial,[29] but this case was called for a settlement hearing, not trial. Although the trial court's findings of fact state that the parties waived a jury and elected to proceed with trial, the judgment itself and the transcript of the hearing (entitled "Settlement Hearing") show that is simply not the case. Moreover, at the hearing Ledbetter's widow admitted receiving $1,258 a month in benefits since her husband's death, so the trial court had no basis whatsoever for denying subrogation completely.

A carrier's subrogation claim should hardly ever be contested; claimants should already know how much they have received in benefits, and a carrier is entitled to reimbursement for medical payments without proof that they were reasonable and necessary.[30] But assuming the Ledbetters wanted to contest those amounts, they could not insist on a summary trial or on being dismissed at the same time, a matter to which we now turn.

## IV. The Plaintiffs' Right to Nonsuit

The plaintiffs argue the trial court had no choice but to grant their nonsuit and dismiss them from the case.[31] The first point is correct but the second is not. Parties have an absolute right to nonsuit *their own* claims,[32] but not *someone else's* claims they are trying to avoid.

---

25. Tex.R. Civ. P. 95.

26. *See id.* 185.

27. *Id.* 47; *Low v. Henry*, 221 S.W.3d 609, 612 (Tex.2007) ("Texas follows a 'fair notice' standard for pleading, in which courts assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy.").

28. *See* Tex.R. Civ. P. 245.

29. *See Lege v. Jones*, 919 S.W.2d 870, 874 (Tex.App.-Houston [14th Dist.] 1996, no writ); *Old Republic Ins. Co. v. Diaz*, 750 S.W.2d 807, 810 (Tex.App.-El Paso 1988, writ denied).

30. *Tex. Workers' Comp. Ins. Fund v. Serrano*, 962 S.W.2d 536, 538 (Tex.1998).

31. Because Ledbetter's adult daughters are entitled to no worker's compensation benefits, *see* Tex. Lab.Code § 408.182, the carrier does not assert its subrogation claim against them.

32. *See Houston Mun. Employees Pension Sys. v. Ferrell*, 248 S.W.3d 151, 157 (Tex.2007); *Hooks v. Fourth Court of Appeals*, 808 S.W.2d 56, 59 (Tex.1991).

Rule 162 governing nonsuits provides that "[a]ny dismissal pursuant to this rule shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief." [33] A claim for affirmative relief is one "on which the claimant could recover compensation or relief even if the plaintiff abandons his cause of action." [34] A carrier's subrogation claim is just such a claim, as it can be prosecuted by a carrier even if an injured worker never does. [35] It is true the carrier here sought no affirmative relief *from the plaintiffs*, seeking instead reimbursement from the funds the defendants were about to pay them. But Rule 162 is not limited to affirmative claims *against the nonsuiter*; it prohibits dismissal if the effect would be to prejudice any pending claim for affirmative relief, period.

As a matter of law, the dismissal here prejudiced the carrier's pending claim for affirmative relief. By statute, a carrier is entitled to first money, and that right is gone forever if the money goes first to someone else. Additionally, the carrier sought a declaratory judgment regarding its duty to make payments to the widow and son in the future, [36] a matter that cannot be decided in their absence. [37] While the plaintiffs were entitled to nonsuit their own affirmative claims, they were not entitled to dismissal from the case.

As the plaintiffs therefore must be reinstated as parties, one more matter requires mention. Perhaps even more troubling than what happened to the carrier in this case is what happened to the minor. The plaintiffs' attorney nonsuited the minor's claims, but that was not his motion to make after an attorney ad litem had been appointed. The only reason judges appoint ad litems and approve minor settlements is because a minor's interests may conflict with those of other family members or their attorneys. The record here makes no mention of recovery for the minor; it is possible this was disclosed and discussed off the record, but of course the primary reason for holding settlement hearings is to create such a record. On this record, one simply cannot tell whether the trial court or the ad litem discharged their duties to make sure this minor was protected. On remand, the trial court must ensure not only that the carrier gets first money, but that the minor's interests are protected in the resulting allocation.

## V. Disposition

When an injured worker settles a case without reimbursing a compensation carrier, everyone involved is liable to the carrier for conversion—the plaintiffs, the plaintiffs' attorney, and the defendants. [38]

---

33. Tex.R. Civ. P. 162.

34. *Univ. of Tex. Med. Branch at Galveston v. Est. of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 101 (Tex.2006) (punctuation omitted); *BHP Petroleum Co., Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex.1990).

35. Tex. Lab.Code § 417.001(b).

36. *See BHP Petroleum*, 800 S.W.2d at 842 (holding plaintiff's nonsuit did not require dismissal of defendant's counterclaim regarding the parties' contractual rights in the future).

37. Tex. Civ. Prac. & Rem.Code § 37.006(a) (providing that a declaratory judgment "does not prejudice the rights of a person not a party to the proceeding"); *see, e.g., Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163 (Tex.2004).

38. *See, e.g., Capitol Aggregates, Inc. v. Great Am. Ins. Co.*, 408 S.W.2d 922, 924 (Tex.1966) (affirming judgment against worker and tortfeasor who settled without reimbursing carrier); *Pan Am. Ins. Co. v. Hi–Plains Haulers, Inc.*, 163 Tex. 1, 350 S.W.2d 644, 646–47 (1961) (holding that "where the employee and the third party entered into a settlement, both employee and the third party were liable to

As between those parties, we have held that generally those who received the funds unlawfully (the plaintiffs and their attorney) should disgorge them rather than making the tortfeasors pay twice.[39]

No one has asked us to set aside the plaintiffs' settlement with the named defendants, and we do not hold that it is necessary. Given the limited size of the carrier's subrogation claim and the large size of the settlement, we are confident the trial court can protect both the carrier's and the minor's interests without undoing the settlement entirely and starting the litigation from scratch.

Accordingly, we affirm the court of appeals' judgment reinstating Texas Mutual's petition in intervention for reimbursement of past and future benefits, and for attorney's fees and costs incurred in trying to collect them. We reverse the judgments of the courts below dismissing the plaintiffs from the litigation and approving distribution of funds to them without deducting that reimbursement. We remand to the trial court for further proceedings consistent with this opinion.

---

the carrier for the amount so paid up to the amount of compensation paid by the carrier to the employee"); *Estrada v. Wausau Ins. Co.,* 985 S.W.2d 480, 484 (Tex.App.-San Antonio 1998, pet. denied); *Prewitt & Sampson v. City of Dallas,* 713 S.W.2d 720, 723 (Tex. App.-Dallas 1986, writ ref'd n.r.e.) (noting carrier may bring conversion action against plaintiff's attorney).

39. *Capitol Aggregates,* 408 S.W.2d at 924 (holding that when carrier seeks reimbursement of settlement funds paid to worker, "the party entitled to the money is attempting to recover from one who wrongfully received the same, and the [tortfeasor] will not be subjected to double liability").