**AFFIRMED and Opinion Filed August 28, 2019**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-18-00564-CV

**REGENCY DEVELOPMENT & CONSTRUCTION SERVICES, LLC, Appellant**
**V.**
**RALPH CARRINGTON D/B/A CARRINGTON AIR CONDITIONING AND HEATING,**
**CARRINGTON AC AND HEAT, LLC, ANTHONY TURPIN, TURPIN & TURPIN, AND**
**TURPIN AND TURPIN, INC., Appellees**

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-15186**

## MEMORANDUM OPINION
Before Justices Bridges, Brown, and Nowell
Opinion by Justice Bridges

Regency Development & Construction Services, LLC, appeals the trial court's summary judgments in favor of Ralph Carrington d/b/a Carrington Air Conditioning and Heating and Anthony Turpin, Ralph Carrington and Carrington AC and Heat LLC, and Turpin and Turpin, Inc. In two issues, Regency argues the trial court erred in granting summary judgment on the grounds that Regency had no evidence of damages because its insurance carrier paid the underlying personal injury settlement and defense costs, and none of the other summary judgment grounds asserted by any of the appellees had merit. We affirm the trial court's judgments.

As stated in Regency's fourth amended petition, the facts are that Regency signed a contract with "Carrington AC & Heating" to perform HVAC work at a jobsite where Regency was

the general contractor. The HVAC subcontract was signed by "Ralph N. Carrington, Owner." At the time the contract was signed, Carrington's HVAC business was operating either as a sole proprietorship using the LLC as a subcontractor, as an LLC, or both. Regency alleged Carrington the sole proprietorship and Carrington LLC were a single business enterprise or a joint enterprise because they were not operated as separate entities, they did not have an implied agreement between them, and they combined their resources to achieve a common business purpose. As a result, Regency argued, Carrington the individual and Carrington LLC were each liable for the actions of the other.

Carrington's agreement with Regency required Carrington to obtain general liability insurance and add Regency as an additional insured on the policy. Carrington contacted his insurance agent, Anthony Turpin, to obtain the required coverage. Turpin was provided with the written insurance requirements or had access to such requirements. After determining what additional coverage Carrington was required to purchase, Turpin sent a certificate of insurance to Regency that indicated Regency was an insured under Carrington's general liability policy. However, Regency was not actually added as an additional insured at the time Turpin said it was.

Under the HVAC subcontract agreement with Regency, Carrington was also obligated to indemnify Regency for claims arising out of the HVAC work performed under the subcontract. The subcontract required Carrington or Carrington LLC to have insurance coverage in place ensuring this indemnity obligation owed to Regency.

Although Carrington did not know it, Turpin sold Carrington a general liability policy of the type that would rarely provide the coverage Carrington needed under construction contracts. In effect, Regency alleged, the additional insured endorsement Turpin sold Carrington was worthless, and a certificate of insurance stating general liability coverage was in place created a false impression regarding the existence of coverage.

–2–

On January 13, 2014, while performing HVAC work at the jobsite, Raymond Kirchmeyer was injured. Kirchmeyer sued Regency and other defendants for his injuries. On December 31, 2015, Kirchmeyer filed his fourth amended original petition alleging negligence claims against Regency.

Regency tendered the lawsuit to Carrington and Carrington's insurer for defense and indemnity under the subcontract and as an additional insured under Carrington's liability policy. Carrington did not accept the defense of Regency in the lawsuit. Further, Carrington's insurer denied Regency's request for defense and indemnity as an additional insured, stating the policy at issue did not cover Carrington for claims arising out of injuries to Carrington's employees.

On January 13, 2016, Regency filed a third party petition against Carrington d/b/a Carrington Air Conditioning and Heating and Turpin d/b/a Turpin and Turpin. On October 20, 2016, Regency filed a second amended third party petition against Carrington and Turpin alleging claims of breach of contract, negligence, negligent misrepresentation, DTPA violations, breach of fiduciary duty, fraud, and fraudulent concealment. On November 28, 2016, the trial court entered an order severing Regency's third-party claims from the Kerchmeyer lawsuit.

By check dated January 20, 2017, Regency's insurer, The Cincinnati Insurance Company, paid $3,000,000 to Kirchmeyer, and Kirchmeyer settled his lawsuit against Regency.

On August 9, 2017, Carrington d/b/a Carrington Air Conditioning and Heating filed a traditional and no evidence motion for summary judgment asserting, among other things, that there was no evidence Regency paid any portion of (1) the $3,000,000 settlement paid to resolve Kirchmeyer's claims and (2) the attorney's fees and expenses incurred in defending Regency against Kirchmeyer's claims. Therefore, the motion alleged, there was no evidence Regency had been damaged.

On August 15, 2017, Regency filed its third amended petition adding Carrington AC and Heat, LLC and Turpin and Turpin, Inc. as defendants. On September 18, 2017, Regency filed its joint response to the motions for summary judgment of Turpin and Carrington. The response argued the indemnity provision of the contract between Regency and Carrington was enforceable, and "the *only* evidence of damages sets out the defense costs and settlement payments incurred by Regency." Regency claimed it "incurred attorney's fees of $126,730.00 and expenses of $121,728.47 in defense of the Kirchmeyer lawsuit" and "also paid $3,000,000 in settlement." Regency argued the "contention that an insurer paid the defense costs and made the settlement payment" was not a defense to liability because such a defense was in contradiction to the collateral source rule. Citing *Haygood v. De Escabedo*, 356 S.W.3d 390 (Tex. 2011), Regency argued a tortfeasor's liability is not reduced because of benefits received by the plaintiff from someone else: a collateral source.

On October 6, 2017, the Turpin defendants filed an amended motion for summary judgment to declare indemnity void asserting that the indemnity provisions in the subcontract between Carrington and Regency did not apply to the circumstances presented in this case. Turpin further argued the indemnity provisions were void under Texas law and there was no evidence Regency paid any damages. Therefore, Turpin argued, there were no damages or attorney's fees for which indemnity could apply.

On November 4, 2017, the trial court signed an order granting the traditional and no evidence summary judgment motions of Ralph Carrington d/b/a Carrington Air Conditioning and Heating and Anthony Turpin d/b/a Turpin and Turpin on the ground that Regency's insurance carrier, Cincinnati Insurance Company, not Regency, paid all defense costs and indemnity amounts. However, the order did not dispose of all parties because Regency had added Carrington AC and Heat, LLC and Turpin and Turpin, Inc.

On November 17, 2017, Carrington individually filed his second and Carrington AC and Heat, LLC filed its first traditional and no evidence motion alleging, among other things, that there was no evidence Regency paid any portion of (1) the $3,000,000 settlement paid to resolve Kirchmeyer's claims and (2) the attorney's fees and expenses incurred in defending Regency against Kirchmeyer's claims.

On February 15, 2018, Turpin and Turpin, Inc. filed its motion for partial summary judgment "as to all claims by regarding all claims of Regency" asserting, among other things, there was "no evidence of any payment or damage by Regency for which indemnity may be made."

On February 28, 2018, the trial court granted Carrington and Carrington AC and Heat, LLC's motions for summary judgment on the ground that Regency's insurance carrier, Cincinnati Insurance Company, not Regency, paid all defense costs and indemnity amounts. On March 9, 2018, the trial court granted Turpin and Turpin, Inc.'s motion for partial summary judgment without stating the grounds upon which it was granted.

On April 5, 2018, Regency filed its motion for reconsideration in which Regency argued the trial court's orders granting summary judgment violated the collateral source rule, which "bars a wrongdoer from offsetting its liability with insurance benefits paid to its opponent." Regency's motion claimed, for the first time, that "ownership of Regency's multiple claims against each of the defendants was contractually conveyed to Cincinnati Insurance Company, and it has the right to sue in Regency's name." Regency's motion was supported by the affidavit of its president stating that, "At the insurance company's request, suit was brought in Regency's name against Carrington and its insurance agent to enforce their responsibilities." Also attached to Regency's motion was a copy of the Cincinnati insurance policy providing that, if Regency had the rights to recover all or part of any payment made by Cincinnati under the "Coverage Part" of the policy,

those rights were transferred to Cincinnati, and Regency would "bring 'suit' or transfer those rights to [Cincinnati] and help [Cincinnati] enforce them" at Cincinnati's request.

On April 16, 2018, Carrington non-suited his remaining claims against Turpin individually and Turpin and Turpin, Inc. On May 3, 2018, the trial court entered an order non-suiting Carrington's claims and causes of action and finding that, with the non-suit, there were "no remaining claims or causes of action in the case." This appeal followed.

In its first issue, Regency argues the trial court erred in granting summary judgment for Carrington and Turpin on the grounds that Regency had no damages because its insurance carrier paid the underlying personal injury settlement and defense costs. Regency argues this was erroneous because it violates the collateral source rule and unfairly rewards Carrington for failing to obtain appropriate insurance and Turpin for selling a worthless policy and then issuing a false additional insured certificate.

The standards of review for traditional and no-evidence summary judgments are well known. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). In a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists, and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. TEX. R. CIV. P. 166a(i); *Gish*, 286 S.W.3d at 310. To defeat a no-evidence summary judgment, the nonmovant is required to produce evidence that raises a genuine issue of material fact on each challenged element of its claim. *Gish*, 286 S.W.3d at 310; *see also* TEX. R. CIV. P. 166a(i).

In reviewing both a traditional and no-evidence summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). We credit evidence favorable to the nonmovant if reasonable jurors could, and we

disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Gish*, 286 S.W.3d at 310.

When a party files a hybrid summary judgment motion on both no-evidence and traditional grounds, we generally first review the trial court's judgment under the no-evidence standard of review. *Rico v. L-3 Commc'ns Corp.*, 420 S.W.3d 431, 439 (Tex. App.—Dallas 2014, no pet.). Should we determine summary judgment was appropriate under the no-evidence standard, we need not address issues related to the traditional summary judgment motion. *Id.* However, if the court is required to affirm the trial court's ruling on traditional grounds, then we only address the traditional grounds. *See Shih v. Tamisiea*, 306 S.W.3d 939, 945 n.8 (Tex. App.—Dallas 2010, no pet.); *see also Diaz v. D.R. Wright Enter., Inc.*, No. 05-17-00172-CV, 2018 WL 3484227, at *4 (Tex. App.—Dallas July 19, 2018, no pet.) (mem. op.).

A central issue to the summary judgments in this case is whether the collateral source rule precluded summary judgment on the grounds that Regency had no damages because its insurance carrier paid the underlying settlement and defense costs. The collateral source rule precludes any reduction in a tortfeasor's liability because of benefits received by the plaintiff from someone else—a collateral source. *Haygood*, 356 S.W.3d at 394–95. The primary justification of the collateral source rule is that a wrongdoer should not become a third-party beneficiary of insurance benefits purchased by the victim. *See Mid-Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 274 (Tex. 1999). Here, the insurance payments were made to Kirchmeyer, not Regency. Separate from the issue of Regency's claims against Carrington and Turpin, the insurance payments were made to settle Kirchmeyer's claims against Regency. If Kirchmeyer received insurance or other benefits from someone else–worker's compensation benefits, for instance–the collateral source rule would preclude any reduction in the payments made by Cincinnati on Regency's behalf. *See*

*id.* We conclude that, under the facts of this case, the collateral source rule does not apply to Regency.

Two of the challenged summary judgments expressly relied on the grounds that Regency presented no evidence of damages because Cincinnati paid the underlying settlement and defense costs, and the third summary judgment was urged on this ground, though the summary judgment order did not state the basis for its judgment. Regency does not dispute that Cincinnati paid the settlement and defense costs. The record shows Regency consistently represented throughout the underlying suit that it was Regency alone, and not any other party, bringing suit. As we have discussed, Regency made no payments and received no payments from any other party. Although Regency had no damages, to the extent Cincinnati might have had a claim against Carrington or Turpin, Cincinnati failed to participate in the underlying lawsuit.

There are two types of subrogation. *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007). Contractual (or conventional) subrogation is created by an agreement or contract that grants the right to pursue reimbursement from a third party in exchange for payment of a loss. *Id.* Equitable (or legal) subrogation does not depend on contract but arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter. *Id.* A party claiming subrogation must plead its right to subrogation. *Wells Fargo Bank, N.A. v. Leath*, 425 S.W.3d 525, 540 (Tex. App.—Dallas 2014, no pet.).

Here, Cincinnati did nothing to assert its right to contractual subrogation. *See id.* Accordingly, Cincinnati's possible entitlement to contractual subrogation or right to some unspecified recovery from Carrington or Turpin was not before the trial court. *See id.* Further, Regency did not plead its status as "subrogee" or assert at any time that it was suing "pursuant to its legal and contractual subrogation rights." *See STICO Mut. Ins. Co., RRG v. Advanced Polymer*

*Coatings, Inc.*, 412 S.W.3d 56, 57 (Tex. App.—El Paso 2013, no pet.) (pleading status as "subrogee" conferred standing on insurer to bring suit under equitable subrogation against third party liable to insured).

Cincinnati also failed to intervene in the underlying suit. Not until after the trial court's summary judgments did Regency attempt to argue that Cincinnati had "the right to sue in Regency's name." Generally, one cannot intervene after final judgment. *Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 36 (Tex. 2008). But when a subrogee's interest has been adequately represented and then suddenly abandoned by someone else, it can intervene even after judgment or on appeal so long as there is neither unnecessary delay nor prejudice to the existing parties. *Id.* Here, however, no attempt was made to adequately represent Cincinnati's interest as subrogee, and any attempt to do so after the trial court's summary judgments came too late. *See id.* We conclude the trial court did not err in granting summary judgment against Regency on the grounds that Regency had no damages because its insurance carrier paid the underlying settlement and defense costs. *See Gish*, 286 S.W.3d at 310. We overrule Regency's first issue.

Because of our disposition of Regency's first issue, we need not address Regency's second issue challenging the other summary judgment grounds raised by Carrington and Turpin.

We affirm the trial court's judgments.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

180564F.P05

–9–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

REGENCY DEVELOPMENT &
CONSTRUCTION SERVICES, LLC,
Appellant

No. 05-18-00564-CV    V.

RALPH CARRINGTON D/B/A
CARRINGTON AIR CONDITIONING
AND HEATING, CARRINGTON AC
AND HEAT , LLC, ANTHONY TURPIN,
TURPIN & TURPIN, AND TURPIN AND
TURPIN, INC., Appellee

On Appeal from the 95th District Court,
Dallas County, Texas
Trial Court Cause No. DC-16-15186.
Opinion delivered by Justice Bridges.
Justices Brown and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee RALPH CARRINGTON D/B/A CARRINGTON AIR
CONDITIONING AND HEATING, CARRINGTON AC AND HEAT , LLC, ANTHONY
TURPIN, TURPIN & TURPIN, AND TURPIN AND TURPIN, INC. recover their costs of this
appeal from appellant REGENCY DEVELOPMENT & CONSTRUCTION SERVICES, LLC.

Judgment entered August 28, 2019.