In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-24-00191-CV

**EAST TEXAS EDUCATIONAL INSURANCE ASSOCIATION, Appellant**

**V.**

**SANFORD JONES AND JAMES THOMAS LYLE, AS INDEPENDENT EXECUTOR OF THE ESTATE OF MARY LOUISE JONES, DECEASED, AND NEXT FRIEND OF J.L., A MINOR, Appellees**

_____

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Cause No. 24DCCV0369**

_____

**MEMORANDUM OPINION**

East Texas Educational Insurance Association ("ETEIA" or "carrier"), a workers' compensation carrier, appeals the trial court's Orders to Determine Lien Amounts and Severance Order awarding it funds for its subrogation interest after paying benefits on behalf of Mary Louise Jones (individually, "Jones" or "Decedent"), who later died. Sanford Jones and James Thomas Lyle, as Independent Executor of the Estate of Mary Louise Jones, Deceased, and Next Friend of J.L., a

1

Minor (collectively, the "Jones Plaintiffs" or "Appellees") intervened in a lawsuit initiated by other plaintiffs who were injured in the same accident and sued Toyota for products liability, among other things. In the lawsuit against Toyota, ETEIA also intervened seeking subrogation for various workers' compensation indemnity and medical benefits it paid to or on behalf of Jones. The Jones Plaintiffs acknowledge in their First Amended Petition in Intervention that "various workers compensation and medical benefits have been paid to or for plaintiff-intervenors."

The Jones Plaintiffs filed two motions central to this appeal: (1) Motion to Approve Apportionment of Global Settlement Offer; and (2) Motion to Determine Amount of Workers' Compensation Lien. Later, the trial court signed an Order granting the Jones Plaintiffs Motion to Sever Claims in Intervention and for Entry of Final Judgment in Severed Action. In seven issues, ETEIA asserts that the trial court's award failed to include $350,000.00 in medical benefits it paid to Jones's medical insurance carrier that had been established as a matter of law, or in the alternative, that the trial court improperly adjudicated ETEIA's subrogation interest at a hearing rather than a trial on the merits and summarily put ETEIA to trial. ETEIA asks us to reverse the trial court's judgment and render judgment awarding it the additional $350,000 for the medical benefits paid, or alternatively, to reverse the trial court's judgment and remand the matter for a new trial on the amount of its subrogation interest paid.

2

We hold the trial court abused its discretion by misapplying the law to the facts of this case when it summarily adjudicated ETEIA's subrogation claim during a settlement hearing and effectively denied its right to "first money" reimbursement of medical benefits paid without a trial on the merits or summary-judgment proceedings. We reverse and remand the matter for further proceedings consistent with this opinion as discussed below.

## BACKGROUND AND PROCEDURAL HISTORY

### Automobile Accident

Jones worked as a teacher for Little Cypress-Mauriceville Consolidated Independent School District (LCM). In May 2008, she was part of a group of teachers who traveled to Mexico for a Spanish immersion program. While in Mexico, she and others were seriously injured in an automobile accident on an excursion when a Mexican national driving the Toyota Hiace van they were in left a mountain roadway. In November 2008, Jones died because of her injuries; several other teachers also died. Other members of the group sued Toyota in District Court in Jefferson County, Texas in cause number B-184,121 ("Jefferson County Lawsuit"), and the Jones Plaintiffs intervened in that lawsuit. We outlined the background facts leading to the underlying products liability litigation in an earlier opinion involving a separate appeal. *See Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 281–82 (Tex. App.—Beaumont 2019, no pet.).

## Orange County Lawsuit: Workers' Compensation Dispute

Initially, ETEIA challenged the compensability of Jones's injuries, asserting she was on an excursion and left the course and scope of her employment. The Division of Workers' Compensation ("DWC") ruled against ETEIA on its compensability challenge and determined that Jones's injuries were compensable. ETEIA appealed the DWC compensability determination by filing a lawsuit in Orange County District Court numbered B-090427-C ("Orange County Lawsuit"). In the Orange County lawsuit, TRS-Active Life as managed by Blue Cross Blue Shield (BCBS), which was Jones's health insurer, and ETEIA entered into a written settlement agreement that called for ETEIA to pay the Jones Plaintiffs indemnity benefits and to reimburse TRS-ActiveCare $350,000 for medical benefits paid related to the accident.

Ultimately, the parties submitted an Agreed Judgment in the Orange County Lawsuit, which ETEIA signed, and the Jones Plaintiffs' counsel signed based on the parties' settlement agreement.[1] On October 25, 2008, the trial court signed the

---

[1]The Jones Plaintiffs make much of the fact in their Brief that the copy of the settlement agreement in the record was not signed by all parties. Even so, the copy in the record shows that both Sanford Jones and James Thomas Lyle signed it, along with a representative of Blue Cross Blue Shield (BCBS). Additionally, the Agreed Judgment the trial court signed, was also signed by ETEIA and attorneys for the Jones Plaintiffs and referenced the settlement agreement.

Agreed Final Judgment in the Orange County Lawsuit. As relevant here, that Agreed Final Judgment provided that

> ETEIA's payment in the amount of $350,000 to TRS-ActiveCare and $50,000 to Roebuck & Thomas, PLLC for attorney fees satisfies ETEIA's obligation to reimburse the Teachers Retirement System of Texas (TRS) and Blue Cross Blue Shield (BCBS) for the medical bills and expenses that they paid to the health care providers who rendered and provided medical treatment to [Jones] for her May 22, 2008 compensable injury. TRS and BCBS will be entitled to no other monies for the medical bills it paid or for any other medical bills submitted to it for medical treatment received by [Jones] as a result of her May 22, 2008 compensable injury.

**Jefferson County Lawsuit and ETEIA's Subrogation Claim**

The record before us shows that on January 23, 2017, the Jones Plaintiffs filed their First Amended Petition in Intervention in the Jefferson County Lawsuit, and on June 28, 2021, ETEIA filed its Second Amended Petition in that same lawsuit.[2] The Jones Plaintiffs assert that Intervenor ETEIA should be required to prove all the benefit payments, and if the Jones Plaintiffs recover anything as a result of the lawsuit, that Intervenor ETEIA "should pay an attorney fee up to 33 and 1/3% of such recovery to plaintiffs' counsel, and pay a proportionate share of expenses incurred by plaintiff in prosecution of this suit, as permitted by the Texas Labor Code." In its Second Amended Petition in Intervention, ETEIA pleads that its total lien amount is $820,065.59, which includes: $17,221.45 in temporary income

---

[2]These are the only petitions in intervention in the record.

benefits (TIBs) to Jones's estate; $402,594.14 in death income benefits (DIBs) to Sanford Jones and J.L.; and $400,250.00 in medical benefits for medical treatment rendered to Jones following her May 22, 2008, injury. Among other things, it asks that it "be reimbursed for its entire subrogation lien and that from Plaintiffs' recovery of damages from Defendants . . . that the Court further enforce ETEIA's right of subrogation by awarding it a future offset in the amount of Plaintiffs' net recovery in accordance with TEXAS LABOR CODE §417.001-417.003."

**Plaintiffs' Motion to Approve Apportionment of Global Settlement**

On November 8, 2023, the Jones Plaintiffs and other Plaintiffs filed their Motion to Approve Apportionment of Global Settlement, and the next day, they filed a Notice of Oral Hearing for the Motion, which stated that the hearing was set for November 20, 2023 at 9:15 a.m. In the Motion to Approve, the Plaintiffs assert that settlement negotiations "resulted in a confidential global settlement offer to resolve all pending claims arising out of the above-described incident against Defendant in return for releases." The Plaintiffs' attorneys assert that the offer was apportioned by Reaud, Morgan & Quinn LLP, the law firm representing them. They request that the trial court approve the apportioned amounts, so the law firm could convey the offers and explain the net recovery to them.

**Jones Plaintiffs' Motion to Determine Amounts of Workers' Compensation Lien**

Six days after filing the Motion to Approve, on November 14, 2023, the Jones Plaintiffs filed a Motion to Determine Amounts of Workers' Compensation Liens, followed by a Notice of Oral Hearing on the Motion filed on Thursday, November 16, 2023, which set the hearing on Monday, November 20, 2023, at 9:30 a.m. This hearing was set the same day but fifteen minutes after the hearing on the Motion to Approve. In the Motion to Determine Amounts, the Jones Plaintiffs assert that "to evaluate the allocated offer and determine if they are willing to accept the settlement offer or not, Plaintiffs need to know the exact amount of workers' compensation benefits for which Intervenors are requesting reimbursement." In the Motion to Approve Amounts, the Jones Plaintiffs agree that they and Jones received workers' compensation benefits because of the accident and that "ETEIA claims to have paid monies on [Jones's] behalf for which they are seeking reimbursement." The Jones Plaintiffs ask that Intervenor ETEIA appear at the hearing on the Motion to Approve and "be made to present evidence as to the benefits actually paid and for which they seek reimbursement to enable the Court to determine the proper amount of each lien."[3]

---

[3]The Jones Plaintiffs also ask that Region 5 Education Service Center, another Intervenor, appear, but that Intervenor is not a party to this appeal.

**ETEIA's Response and Affidavit of Patricia Blackshear**

On November 16, 2023, ETEIA filed the affidavit of records custodian Patricia Blackshear who averred she oversees records of Claims Administrative Services, Inc., a third-party administrator for workers' compensation benefits for ETEIA. She states that the total amount of benefits paid was $820,065.59, which included DIBs of $402,564.14, TIBs of $17,221.45, and medical bills and funeral expenses of $400,250.00. Blackshear also attached the "Payment Detail Report" for Jones's claim. The attached report includes payment breakdown notes showing, a "Total for IND" paid of $419,815.29. It shows the "Total for MED" listed as $400,250.00, which included: $350,000.00 paid to TRS-ActiveCare; $50,000.00 to Roebuck & Thomas PLLC, the Jones Plaintiffs' attorneys in the Orange County lawsuit; and two separate $125.00 payments totaling $250.00 to Cunningham Lindsey.[4]

Later the same day, ETEIA also filed Intervenors' Response to Plaintiffs' Motion to Approve the Apportionment of a Global Settlement Offer, attaching as an exhibit Blackshear's earlier filed affidavit and "Payment Detail Report." ETEIA stated in its Response that it "was not invited to participate in the discussions of the

---

[4]On appeal, ETEIA does not challenge the trial court's refusal to award the $50,000.00 paid to the Jones Plaintiffs' counsel in the Orange County Lawsuit or the $250.00; it seeks reimbursement for the $350,000.00 payment for medical benefits to TRS-ActiveCare plus the amounts paid for TIBs and DIBs.

Defendants and Plaintiffs' counsel, which led to The Settlements between the Defendants and the Plaintiffs." ETEIA asserted that it was notified of the settlement in May 2023, and the workers' compensation lien needed to be discussed, but they had not reached an agreement on the workers' compensation lien. In its Response, and consistent with Blackshear's affidavit, ETEIA again asserted a total final subrogation amount of $820,065.59 and that it paid: $400,250.00 in medical bills and expenses for the medical treatment received and rendered to Jones following her injury; total amounts of DIBs paid was $419,815.59 (broken down into $17,221.45 in TIBs and $402,594.14 in DIBs). It also claimed it became obligated to pay and did pay workers' compensation benefits to and on behalf of the Jones Plaintiffs totaling $820,065.59.

ETEIA contends that the Motion to Approve the Apportionment of a Global Settlement Offer does not address ETEIA's statutory workers' compensation liens and only asks that it approve the allocation among the Plaintiffs. ETEIA argues that Plaintiffs' Motion to Approve cannot be ruled on, and no allocation can be approved by the Court until the statutory workers' compensation liens held by the workers' compensation parties, who have intervened, are properly addressed pursuant to the Labor Code, which controls this issue. ETEIA asserts that Labor Code section 417.002 controls, which among other things, requires that a plaintiff's net proceeds in a third-party action shall be used to reimburse the insurance carrier for benefits,

9

including medical benefits, that have been paid for the injury. *See* Tex. Labor Code Ann. § 417.002(a). ETEIA contends that under Labor Code section 417.002, it is entitled to "first money" from the tortfeasor, and until the carrier is reimbursed in full, neither the employee nor his representatives are entitled to any of the third-party recovery. It also asserts that under section 417.003(c), the Jones Plaintiffs' attorneys are not entitled to their attorney's fees out of the workers' compensation lien, because ETEIA has been "actively represented" by its own counsel. Additionally, ETEIA argues that because the Jones Plaintiffs' attorneys have acted contrary to a carrier's subrogation interests, by attempting to eliminate the lien or convince the carrier they are entitled to nothing, they are not aiding in the carrier's recovery. It also disputes that the statutory scheme allows for the award of expenses out of the subrogation lien funds.

The Jones Plaintiffs did not file a reply or any affidavits contesting ETEIA's lien amounts before the hearing.

**Hearing and Trial Court's Orders**

There is no reporter's record of the November 20, 2023, hearings, but that day, the trial court signed two orders. The first was an Order Granting Motion to Approve the Apportionment of a Global Settlement Offer. This Order did not contain any dollar amounts and only allocated percentages among the various Plaintiffs. It allocated 16.67% to the Jones Plaintiffs. The second order the trial court signed was

10

the Order on Motion to Determine Amounts of Workers' Compensation Liens. In the Order on Motion to Determine Amounts, the trial court showed that it considered the Motion, "and the responses and replies thereto, and the arguments of counsel[.]" The Order added that ETEIA "has established that it has paid $419,785.59 in benefits for the compensable injury as contemplated by Tex. Lab. Code Ann. § 417.022[,]" that Plaintiffs' counsel is entitled to a one-third attorneys' fee and reimbursement of its proportionate share of expenses under 417.023, and that ETEIA shall receive as provided by section 417.023 an amount corresponding to the court's finding that it has established that it has paid $419,785.59 in benefits. This amount mirrored the DIBs and TIBs. The Order did not address the $350,000.00 in medical benefits ETEIA reimbursed TRS-ActiveCare in the Orange County Lawsuit. One week later, on November 27, 2023, the Jones Plaintiffs submitted an Amended Order on Motion to Determine Amount of Workers' Compensation Liens without any Motion or attached document explaining the need for Amended Order, which eliminated the reference to the one-third share of attorney's fees. The trial court signed the Amended Order the same day the Jones Plaintiffs submitted it.

**ETEIA's Motion for Reconsideration and Jones Plaintiffs' Response**

On December 1, 2023, ETEIA filed Intervenor's Motion for Reconsideration which attached multiple exhibits. In the Motion for Reconsideration, ETEIA again lays out the amounts it paid. ETEIA argues that with its original response, it filed

Blackshear's sworn business records affidavit that included the total amount of $820,065.59, including medical bills and funeral expenses of $400,250.00, and the Jones Plaintiffs never objected to the sworn affidavit nor was there a contravening affidavit filed. Yet, it contends that the trial court's Order disregards the medical benefits paid by ETEIA of $400,250.00.[5] ETEIA argues that during the case, it has filed multiple affidavits evidencing the medical bills and benefits paid with the relevant records and attaches those as Exhibits B through D.

ETEIA states that the BCBS medical bills were eventually negotiated down and ultimately resolved for $400,250.00 and "that it is against the weight of all the evidence to conclude that there was $0.00 in medical bills and benefits paid" on Jones's behalf. It then asserts the original total of the medical bills was $840,479.50 which was reduced via negotiation to $400,250.00 that is subject to reimbursement under 417.002(a). ETEIA again contends that Jones Plaintiffs' attorneys are not entitled to a portion of their fees from the reimbursement amounts under section 417.003, because they never represented ETEIA's interests. In support of this, it points to the Jones Plaintiffs' attorneys' attempts to reduce or eliminate the lien, and the fact that ETEIA was represented by its own attorneys. ETEIA also asks the court to clarify whether 417.003(a) or (c) applies.

---

[5] This amount includes the $350,000.00 reflected on the Payment Detail Report that ETEIA asserts it is entitled to, along with the $50,000.00 and $250.00 payment that ETEIA does not claim on appeal.

12

With its Motion for Reconsideration, ETEIA attached the following exhibits: Blackshear's affidavit and Payment Detail Report originally filed on November 16, 2023; ETEIA's Notice of Filing Second Business Record Affidavit of Crawford Armstrong III, saying it attached 229 pages of BCBS records originally filed on October 7, 2021; ETEIA's Notice of filing Third Business Record & Lien Affidavit including "Third Affidavit in Support of Subrogation Lien and Business Record Affidavit" of Crawford Armstrong III attaching 635 pages of insurance related records and records reported by BCBS and TRS originally filed with court on March 22, 2022; and ETEIA's "Notice of Filing Second Business Record Affidavit" containing Crawford Armstrong III's affidavit originally attaching 229 pages of insurance related records showing filed October 7, 2021.[6] On January 10, 2024, ETEIA filed a Notice of Hearing by Submission setting "Intervenor's Motion for Reconsideration" to be considered on January 19, 2024.

On January 10, 2024, for the first time in writing, the Jones Plaintiffs addressed ETEIA's Motion for Reconsideration by filing their Affidavit in Opposition to Defendant's Motion to Reconsider. This was almost two months after the hearing on the Motion to Approve and Motion to Determine Lien Amounts. The

---

[6]These exhibits do not attach the medical and billing records referenced in each affidavit; the exhibits show that the notices and affidavits were filed, what they purported to attach, and the dates they were originally filed by ETEIA. Additionally, Exhibit D appears to be a duplicate of Exhibit B.

attached Business Records Affidavit was executed by an attorney from the Jones Plaintiffs' attorneys in the prior Orange County Lawsuit. The affidavit attached twenty-eight pages of records from the Roebuck & Thomas Law Firm. The records included the "Release and Settlement Agreement in the Orange County Lawsuit" which states that BCBS and TRS-ActiveCare were among the Releasors and that ETEIA was the Releasee. The attorney who represented the Jones Plaintiffs in the Orange County Lawsuit signed the Release and Settlement Agreement. The Release and Settlement Agreement outlined the facts of the worker's compensation compensability dispute. It also attached the DWC Order determining that Jones's injury was compensable. Finally, attached to the Business Records Affidavit was the Agreed Final Judgment in Orange County Lawsuit signed by the Jones Plaintiffs' attorney, ETEIA, and the trial court. The Agreed Final Judgment referenced the parties' Settlement Agreement and included the following:

> IT IS ORDERED, ADJUDGED and DECREED that ETEIA's payment in the amount of $350,000.00 to TRS-ActiveCare and $50,000 to Roebuck & Thomas, PLLC for attorney fees satisfies ETEIA's obligation to reimburse the Teachers Retirement System of Texas (TRS) and Blue Cross Blue Shield of Texas (BCBS) for the medical bills and expenses that they paid to the health care providers who rendered and provided medical treatment to MARY JONES for her May 22, 2008 compensable injury. TRS and BCBS will be entitled to no other monies for the medical bills it paid or for any other medical bills submitted to it for medical treatment received by MARY JONES as a result of her May 22, 2008 compensable injury.

14

The Agreed Judgment also reflects that the trial court approved the Settlement Agreement "as required under Texas Labor Code § 410.256 and § 410.258[.]" It explained that a copy of the Agreed Judgment and the Settlement Agreement was served upon the DWC at least thirty-one days before the entry of the Judgment. The Jones Plaintiffs made no argument; they simply filed the affidavit and attached the records.

On January 18, 2024, the Jones Plaintiffs filed their Response to Intervenor ETEIA's Motion for Reconsideration, which included multiple exhibits. It was the first time they presented any argument in writing contesting ETEIA's lien amounts. The Jones Plaintiffs responded that ETEIA's proof regarding "medical bills and funeral expenses" is inadequate. They argued that ETEIA initially denied the claim, which was later determined to be compensable. They explained that Roebuck was a law firm and contended that any payments to them and the $250.00 to the claims adjusting firm were not for medical bills. They also attached a "certified copy of the judgment" in the Orange County Lawsuit. In sum, the Jones Plaintiffs took the position that ETEIA did not pay any medical bills, instead all ETEIA did was settle a lawsuit. They argued that given ETEIA's denial of the claim and challenge to compensability, ETEIA "settled a lawsuit in which it likely faced exposure for its own wrongful denial of the claim." They then contended that ETEIA's counsel did not "actively participate" in the litigation and described the depositions and events

15

ETEIA's attorneys did not attend. The Jones Plaintiffs argued that the $50,000 paid to Roebuck & Thomas and $250 paid to its adjusting company should be disallowed. They asked that ETEIA's Motion for Reconsideration be denied except that the trial court should enter an Order Nunc Pro Tunc correcting the references to the Texas Labor Code sections 417.002 and 417.003.

The Jones Plaintiffs attached the following exhibits to their Response to Intervenor's Motion for Reconsideration: Blackshear's Affidavit and Payment Detail Report for the claim; Business Records Affidavit from Jeffrey Roebuck with records including "Release and Settlement Agreement," DWC Order, Agreed Final Judgment unsigned by judge but signed by Jones's Plaintiffs' attorney; certified copy of Agreed Final Judgment in Orange County Lawsuit; Sedgwick/Cunningham Lindsey web announcement; TRS-ActiveCare website; Affidavit of Attorney Curtis W. Leister outlining all the ways ETEIA did not participate in the recovery from Toyota; and Affidavit of John G. Werner describing how many depositions he attended and stating that ETEIA only attended five of seventeen and attaching appearance sheets for depos.

## Amended Order on Motion to Determine Amounts of Workers' Compensation Liens

On January 22, 2024, the trial court signed another Amended Order on Motion to Determine Amounts of Workers' Compensation Liens. The Order did not change the amounts but changed the Labor Code sections. The Order states that ETEIA has

16

established that it has paid $419,785.59 in benefits for compensable injury as contemplated by Texas Labor Code section 417.002. It adds that ETEIA should receive an amount, as provided by the calculations under section 417.003(a) "an amount corresponding to the Court's finding that it has established it has paid $419,785.59 in benefits for the compensable injury as contemplated by Tex. Lab. Code Ann. § 417.002."

**Jones Plaintiffs' Motion to Sever Claims in Intervention and for Entry of Final Judgment in Severed Action**

On February 28, 2024, the Jones Plaintiffs filed a Motion to Sever and for Entry of Final Judgment in Severed Action. In the Motion to Sever, the Jones Plaintiffs assert that a dispute has arisen between them and Intervenor ETEIA. They note the trial court's previous rulings "that ETEIA had established entitlement only to $419,785.59 in benefits, and that Counsel for Plaintiffs was entitled to a 1/3 fee and proportionate share of expenses as provided by Section 417.003(a)." The Jones Plaintiffs then provide a calculation for the attorney's fees, expenses, and net payment to ETEIA. They contend "the attorneys fee deduction chargeable to ETEIA is $139,928.53 (1/3 of $419,785.59). The lien being 41.978559% of the gross recovery, the pro-rata share of expenses to be deducted is $46,869.30. This leads to a net payment to ETEIA by Plaintiffs of $232[,]987.76." The Jones Plaintiffs then argue the trial court's rulings regarding the lien amount must be made final for there

to "be certainty about the disposition of the settlement proceeds." They then ask the trial court to enter a severance order of ETEIA's subrogation claims.

The Jones Plaintiffs set their Motion to Sever Claims in Intervention for hearing March 6, 2024. The same day of the hearing, the trial court signed the Order severing ETEIA's claims in intervention.

**Findings of Fact and Conclusions of Law and Motion for New Trial**

On March 22, 2024, ETEIA filed its Request for Findings of Fact and Conclusions of Law under Rule 296. *See* Tex. R. Civ. P. 296. It filed Proposed Findings of Fact and Conclusions of Law pertaining to the following trial court proceedings and orders: (1) the Jones Plaintiffs' Motion to Determine Amounts of Workers' Compensation Lien, filed November 14, 2023; (2) the November 20, 2023, hearing on the Jones Plaintiffs' Motion to Determine Amounts of Workers' Compensation Lien; (3) the Order on Motion to Determine Amounts of Workers' Compensation Liens, entered on November 20, 2023; (4) the Amended Order on Motion to Determine Amounts of Workers' Compensation Liens, entered on November 27, 2023; (5) ETEIA's Motion for Reconsideration; (6) the Amended Order on Motion to Determine Amounts of Workers' Compensation Liens, entered on January 22, 2024; and (7) the Severance Order pertaining to ETEIA's claims, entered March 7, 2024.

On April 4, 2024, ETEIA filed its Motion for New Trial. In the Motion for New Trial, ETEIA complains that the trial court wrongfully recited the amount of workers' compensation benefits paid as $419,785.19 under Texas Labor Code section 417.002. ETEIA asserts that the trial court's order "disregarded the $350,000 ETEIA paid to TRS-ActiveCare in settlement of Cause No. B-090427-C, *East Texas Educational Insurance Association v. Beneficiaries of Mary Louise Jones, et al*, in 163rd District Court of Orange County, Texas." ETEIA argues that TRS-ActiveCare's claim against ETEIA in the Orange County Lawsuit "was a subclaim pursuant to TEX. LABOR CODE § 409.009, for reimbursement of medical benefits." ETEIA notes that the trial court's Agreed Final Judgment in that proceeding determined "that this payment was for reimbursement of medical bills and expenses that TRS-ActiveCare paid to the health care providers who rendered and provided medical treatment to Mary Jones for her May 22, 2008 compensable injury." It contends that the Jones Plaintiffs presented no evidence that ETEIA's payments were for any other claims like Insurance Code violations, DTPA claims, or any common-law claims, and that regardless, such claims would have been pre-empted by the Texas Workers' Compensation Act.

In the Motion for New Trial, ETEIA also specifies that TRS-ActiveCare was billed $1,771,507.89 and paid $830,630.84 in medical benefits for the compensable injury. ETEIA contends that under Texas Labor Code section 409.0091(h), it was

19

only required to reimburse TRS-ActiveCare the lesser of the amount payable under the applicable fee guideline as of the date of service or the actual amount paid by the health care insurer. Finally, ETEIA argues that its "$350,000 settlement payment to TRS-ActiveCare constituted payment for medical benefits, as provided for by TEX. LABOR CODE § 417.002(a)." Ultimately, ETEIA asks that the trial court find it "paid $769,785.59 in benefits for the compensable injury" under section 417.002.

On April 10, 2024, the Jones Plaintiffs filed their Preliminary Response to Intervenor ETEIA's Request for Findings of Fact and Conclusions of Law stating that they improperly calendared a deadline and asking for more time to respond. On April 17, 2024, ETEIA filed its Notice of Past Due Findings of Fact and Conclusions of Law. The next day, ETEIA filed its Amended Proposed Findings of Fact and Conclusions of Law, which removed its earlier requested findings numbered 13 through 15 but did not add any new findings.

On April 22, 2024, the Jones Plaintiffs filed their Response to ETEIA's Request for Findings of Fact and Conclusions of Law. They asserted that ETEIA's Proposed Findings of Fact and Conclusions of law "directly conflict with the Court's rulings and are wholly incompatible with the Court's rulings and Judgment." The Jones Plaintiffs then submitted their proposed Findings of Fact and Conclusions of Law.

On April 25, 2024, the trial court signed the Findings of Fact and Conclusions

of Law submitted by the Jones Plaintiffs, which contained the following:

I. FINDINGS OF FACT

1. Mary Louise Jones was injured in the accident made the subject of this lawsuit on May 22, 2008.

2. The Texas Department of Insurance, Division of Workers' Compensation determined that Mary Louise Jones was in the course and scope of her employment with Little Cypress Mauriceville ISD when she was injured in the accident the subject of this lawsuit on May 22, 2008.

3. As a result of the determination of the Texas Department of Insurance, Division of Workers' Compensation, ETEIA became obligated to pay worker's compensation benefits to or on behalf of Mary Louise Jones as a result of the accident made the subject of this lawsuit on May 22, 2008.

4. Mary Louise Jones died on November 10, 2008, as a result of her injuries sustained in the accident made the subject of this lawsuit.

5. Sanford Jones was the surviving spouse of Mary Louise Jones.

6. [J.L.] was the surviving minor child of Mary Louise Jones.

7. ETEIA paid workers' compensation death benefits totaling $402,564.14 to the beneficiaries of Mary Louise Jones. These beneficiaries were Sanford Alvin Jones and [J.L.].

8. ETEIA paid temporary income benefits totaling $17,221.45.

9. ETEIA originally denied the claims of Mary Louise Jones and her beneficiaries.

10. The beneficiaries appealed the denial, and that appeal was upheld by the Texas Department of Insurance, Division of Workers' Compensation.

11. ETEIA then appealed the decision of the Texas Department of Insurance, which appeal was docketed as Cause Number B-090427, *East Texas Educational Insurance Association v. Beneficiaries of Mary Louise Jones, et al.,* in the 163rd Judicial District Court of Orange County, Texas. (the "Worker's Compensation Proceeding").

12. The Worker's Compensation Proceeding was settled, pursuant to which ETEIA for itself -- and for its excess insurance company Midwest Employers Casualty Company; and for its third party administrator for workers compensation claims, Claims Administrative Services, Inc.; and for its adjuster handling the claim, Ann Barron, and

21

for "all other persons, firms, corporations [sic] who have any legal obligations, duties, or involvement in Mary Jones' workers compensation claim – demanded and obtained releases from:

    a. Blue Cross Blue Shield of Texas (BCBSTX);

    b. The Teacher Retirement System of Texas (TRS), acting in its capacity of TRS-ActiveCare;

    c. Sanford Jones;

    d. James Thomas Lyle, individually; and

    e. James Thomas Lyle, as next friend of [J.L.], a minor.

13. The releases obtained from these parties are exceptionally broad and comprehensive, and include releases of the following specifically enumerated claims:

    a. Claims for violations of the Texas Labor Code;

    b. Claims for violations of the Texas Deceptive Trade Practices Act;

    c. Breach of any common law duty, including the duty of good faith and fair dealing;

    d. Claims of intentional or negligent infliction of emotional distress; and

    e. "Any other claim or damage which may related, either directly or indirectly," to the workers' compensation claim of Mary Jones.

14. The settlement agreement further notes that "RELEASEE [ETEIA] denies any liability and allegations that could be made by RELEASORS BCBSTX and TRS-ActiveCare for claims of reimbursement and payment of [medical bills]."

15. Pursuant to the settlement, ETEIA did not release any party from any claim, but instead purportedly paid $350,000 to TRS-ActiveCare, and $50,000 to the attorneys representing the family of Mary Jones.

16. Of the total amount recovered by all Plaintiffs in Cause No. B-184,121, 16.67% was allocated to Sanford Jones and James Thomas Lyle, as Independent Executor of the Estate of Mary Louise Jones, Deceased, and as Next Friend of [J.L.], a Minor. As such, 16.67% of the total litigation expenses incurred by all plaintiffs is allocated to the settlement made by Sanford Jones and James Thomas Lyle, as Independent Executor of the Estate of Mary Louise Jones, Deceased, and as Next Friend of [J.L.], a Minor, for determining a proportionate share of the litigation expenses to be awarded under Texas Labor Code Section 417.003(a)(2).

17. With respect to Cause No. B-184,121:

    a. ETEIA did not retain any experts;

22

b. ETEIA did not participate in any hearings against Toyota;

c. ETEIA had no involvement in negotiating the settlement against Toyota;

d. ETEIA "attended" only a minority of the depositions conducted in the case, during which its counsel did not ask any questions of any witness;

e. Reaud, Morgan & Quinn took the lead on deposing all Defendant experts;

f. Reaud, Morgan & Quinn selected and presented for deposition various experts in fields such as mechanical engineering (two), seat belts, accident reconstruction, biomechanics, and human factors;

g. Reaud, Morgan & Quinn attorneys traveled to various states, and also in one instance to Mexico;

h. Reaud, Morgan & Quinn located and purchased two exemplar vehicles for use by the experts;

i. Reaud, Morgan & Quinn located (in Mexico) the driver of the subject van, and arranged for his deposition to be taken in Mexico;

j. Reaud, Morgan & Quinn retained research entities to research the technical data on the subject vehicle and similar vehicles;

k. Reaud, Morgan & Quinn retained foreign-language translators not only for Mexican documents, but also for Toyota product literature which was originally published in languages such as German or Dutch; and

l. Reaud, Morgan & Quinn handled all aspects of the appeal in *Toyota Motor Co. v. Cook,* 581 S.W.3d 278 (Tex. App.-Beaumont 2019, no pet).

## II. CONCLUSIONS OF LAW

18. In reaching its decision, this Court accepted and considered all of the filings recited in the introductory part of this Order, including but not limited to the affidavits of Patricia Blacks[h]ear, Roebuck & Thomas, PLLC, John Werner, and Curtis Leister, with the attachments thereto.

19. ETEIA's arguments regarding Texas Labor Code Section 409.009 and 409.0091 were not presented to the Court prior to its ruling and thus have been waived.

20. ETEIA has not established that any of the money paid in settlement of the lawsuit Cause Number B-090427, *East Texas Educational Insurance Association v. Beneficiaries of Mary Louise Jones, et al.,* in

23

the 163ʳᵈ Judicial District Court of Orange County, Texas was "medical benefits that have been paid for the compensable injury" under Tex. Lab. Code Section 417.002.

21. ETEIA did not "actively participate in obtaining a recovery" in the case as contemplated by Texas Labor Code Section 417.003(c).

22. Under Texas Labor Code Section 417.003(a), Reaud, Morgan & Quinn is entitled to a fee of one-third of the insurance carrier's recovery. Since the insurance carrier's recovery is $419,785.59, the amount to be deducted as attorney's fees is $139,928.53.

23. The subrogation interest of ETEIA is 41.978559% of the gross recovery by Sanford Jones and James Thomas Lyle, as Independent Executor of the Estate of Mary Louise Jones, Deceased, and as Next Friend of [J.L.], a Minor. As such, ETEIA's proportionate share of the litigation expenses apportioned to the recovery is $46,845.37, to be awarded out of ETEIA's recovery pursuant to Texas Labor Code Section 417.003(a)(2).

24. The net recovery for ETEIA, based on $419,785.59 in benefits paid, minus $139,928.53 in attorneys fee, and minus $46,845.37 as a proportionate share of expenses, is $233,011.69, to be paid by Sanford Jones and James Thomas Lyle, as Independent Executor of the Estate of Mary Louise Jones, Deceased, and as Next Friend of [J.L.], a Minor from the settlement proceeds obtained from Toyota.

On April 26, 2024, after the trial court signed the Jones Plaintiffs' Findings of Fact and Conclusions of Law, ETEIA filed its Request for Additional Findings of Fact and Conclusions of Law with proposed Additional Findings of Fact and Conclusions of Law attached. ETEIA's additional requested findings address that Plaintiffs' Findings of Fact and Conclusions of Law signed by the trial court omits language from the settlement agreement, and the signed Findings of Fact and Conclusions of Law do not accurately reflect the agreement. The additional requested findings and conclusions notes that the "settlement agreement clearly reflected that the $350,000 settlement payment was for reimbursement of medical

payments made by TRS-ActiveCare" then cites the portions of the settlement agreement with the applicable language. ETEIA also points to language in the Agreed Final Judgment from the Orange County Lawsuit. It includes a conclusion of law that TRS-ActiveCare's claim against ETEIA in the Orange County Lawsuit was a "subclaim pursuant to Tex. Labor Code § 409.009, for reimbursement of medical benefits." Additional conclusions of law cite to Labor Code section 417.002 and state that the Jones Plaintiffs "would receive a windfall, and would be unjustly enriched if they are not required to provide any reimbursement out of the settlement for the medical benefits that were paid by TRS-ActiveCare and/or ETEIA." The additional proposed conclusions reflect that: the subrogation lien was improperly adjudicated at a hearing and should have been adjudicated at a trial; ETEIA was only given five days' notice of the November 20, 2023 hearing, which included two weekend days; no notice of a trial setting or of an evidentiary hearing was given to ETEIA where it would have to prove the amount of its subrogation claim; to the extent that the November 20, 2023 hearing could be considered a "trial," pursuant to Texas Rule of Civil Procedure 245, the Plaintiffs did not give timely and/or proper notice of the trial setting or timely file a responsive pleading under Rule 63; and that the trial court's conclusion of law should be withdrawn as ETEIA was not provided adequate notice or time to fully brief all issues pertaining to its subrogation before the November 20 hearing. The trial court did not sign ETEIA's Requested

25

Additional Findings of Fact and Conclusions of Law. On May 21, 2024, ETEIA appealed.

## ISSUES ON APPEAL

In seven issues, ETEIA complains the trial court erred: (1) in failing to award reimbursement to ETEIA for its $350,000.00 settlement payment to TRS-ActiveCare, which constituted reimbursement of medical benefits recoverable under Labor Code section 417.002(a); (2) by adjudicating ETEIA's subrogation interest at a hearing when it should have been adjudicated at a trial; (3) in putting ETEIA to trial summarily, if the November 20, 2023, hearing could be considered a "trial;" (4) by allowing a "trial" to proceed, if the hearing could have been considered a trial, where the Jones Plaintiffs failed to timely file a responsive pleading to ETEIA's intervention at least seven days before trial under Texas Rule of Civil Procedure 63; (5) by adjudicating ETEIA's subrogation interest, as the issue was not ripe until there was a third-party recovery, and Appellees' motion was an improper request for an advisory opinion; (6) by not requiring the court reporter to make a record of the November 20, 2023 hearing; and (7) in holding that ETEIA's arguments about Texas Labor Code sections 409.009 and 409.0091 were waived, as the conclusion of law was vague, and ETEIA was not given proper notice from Appellees' motion that these sections would be at issue. In answer to issues two and three, we hold that the trial court erred by adjudicating ETEIA's subrogation interest at a hearing and

26

summarily putting ETEIA to trial in violation of Texas Rule of Civil Procedure 245. We therefore reverse and remand this matter for a new trial as discussed below.

## INITIAL MATTER: WAIVER

In their Brief, the Jones Plaintiffs' refrain is that ETEIA has waived everything – particularly its complaints about the lack of a jury trial by participating in hearings without objection. Neither motion the Jones Plaintiffs filed would have given ETEIA any indication they were contesting the subrogation claim or reimbursement amounts or that ETEIA would need to brief every conceivable issue in support of its subrogation and reimbursement claims before the hearings. Seemingly, the Jones Plaintiffs want us to affirm the trial court's determination of the lien amounts and calculations, implying that the process afforded was sufficient for ETEIA to be meaningfully heard. ETEIA appeared at *hearings* noticed on *motions* not for a *trial*. These distinctions matter, especially here, where the trial court—unbound by the rules of evidence and a conventional trial on the merits— disregarded the only evidence on file at the time of the hearing, which was Blackshear's affidavit and records that ETEIA filed before the hearing.

Elsewhere in their Brief, the Jones Plaintiffs assert that "there is no suggestion that any evidence was introduced at the November 20, 2023 hearing[,]" and "ETEIA's appellate counsel wisely does not assert that anything took place at the hearing other than attorney argument." Despite the Jones Plaintiffs' argument to the

27

contrary, the record reflects that ETEIA did complain about a lack of notice and the fact that their subrogation claims were summarily decided in their Request for Additional Findings of Fact and Conclusions of Law within ten days of the trial court having signed the original Findings of Fact and Conclusions of Law submitted by the Jones Plaintiffs. *See* Tex. R. Civ. P. 298 (permitting a party to request additional findings within ten days after the trial court files its original).[7] We conclude that ETEIA has preserved its complaint about the trial court summarily adjudicating its right to reimbursement and subrogation claim at a hearing.

## ANALYSIS

This case is a procedural quagmire given the orders, amended orders, and absence of a reporter's record. To distinguish case authority, the Jones Plaintiffs assert in their Brief that they "responded in good faith and did not engage in any chicanery, let alone the egregious conduct which led up to the *Ledbetter* decision." *See Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 34–35 (Tex. 2008). While some differences exist between these facts and *Ledbetter*, a significant similarity is the effort to subvert the express language of the Workers' Compensation Act without a trial on the merits.

---

[7]ETEIA's Second Amended Petition in Intervention also reflects that they adopted portions of the Plaintiffs' pleadings, and that the Plaintiffs' pleadings demanded a jury trial. Additionally, a docket notation indicates the jury fee had been paid, although it does not specify which party paid the fee.

We turn to issues one through three. In issue one, ETEIA complains that the trial court erred by refusing to award reimbursement to ETEIA for its $350,000 settlement payment to TRS-ActiveCare, which constituted reimbursement of medical benefits recoverable under Labor Code section 417.002(a). In conjunction with issue one, it asks us to render judgment awarding that amount since the undisputed evidence in the record establishes ETEIA paid $350,000 as reimbursement for medical expenses. In issues two and three, however, ETEIA complains that the trial court erred by adjudicating ETEIA's subrogation interest at a hearing when it should have been adjudicated at a trial and in putting ETEIA to trial summarily, if the November 20, 2023, hearing could be considered a "trial." Since a lack of due process likely resulted in the rendition of an improper judgment, remand rather than rendition is the appropriate remedy, as we discuss below. We turn to issues two and three.

**Standard of Review**

Although neither party provides us with a standard of review, in *Ledbetter*, the Court explained that where a trial court approved a settlement that did not give the workers' compensation carrier first money, it constituted an abuse of discretion. *See id.* at 36. Thus, we will review the trial court's determination of lien amounts that failed to reimburse the carrier with the first money of any recovery up to the amount of benefits paid, including medical benefits, for an abuse of discretion. *See*

29

*id.* This reflects the premise that one way a trial court abuses its discretion is by misapplying the law to the established facts of the case. *See Diamond Hydraulics, Inc. v. GAC Equip., LLC*, No. 24-1049, 2026 WL 844386, at *2 (Tex. Mar. 27, 2026) (quoting *Huynh v. Blanchard*, 694 S.W.3d 648, 674 (Tex. 2024)).

**Applicable Law**

The Texas Supreme Court has repeatedly recognized the principle that "the compensation carrier gets the first money a worker receives from a tortfeasor." *Ledbetter*, 251 S.W.3d at 35 (collecting cases) (citations omitted). The Court has also explained the importance of "[f]irst-money reimbursement" as it "is crucial to the worker's compensation system because it reduces costs for carriers (and thus employers, and thus the public) and prevents double recovery by workers." *Id.* (citing *Capitol Aggregates, Inc. v. Great Am. Ins. Co.,* 408 S.W.2d 922, 924 (Tex. 1966); *Fort Worth Lloyds v. Haygood*, 246 S.W.2d 865, 868 (1952)). From any recovery by the injured worker or her beneficiaries, "'the carrier is first entitled to the money up to the total amount of benefits it has paid[.]'" *Id.* (quoting *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 530 (Tex. 2002)).

How much a beneficiary receives as part of a settlement matters, as it implicates how the money is paid. *See id.* As part of the statutory plan, any net recovery up to the amount of past benefits goes to the carrier. *See id.*; *see also* Tex. Lab. Code Ann. § 417.002(a). Any recovery greater than past benefits but less than

30

all future benefits goes to the beneficiary but releases the carrier from future payments to that extent. *See* Tex. Lab. Code Ann. § 417.002(b); *Ledbetter*, 251 S.W.3d at 35–36. Any recovery greater than past and future benefits combined goes to the beneficiary. *See* Tex. Lab. Code Ann. § 417.002(c); *Ledbetter*, 251 S.W.3d at 36. "The net amount recovered by a claimant in a third-party action *shall be used* to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury." Tex. Lab. Code Ann. § 417.002(a) (emphasis added). "There is nothing discretionary about this statute; a carrier's right to reimbursement is mandatory." *Ledbetter*, 251 S.W.3d at 36. Said another way, "until a carrier is reimbursed in full, 'the employee or his representatives have no right to any of such funds.'" *Id.* (quoting *Capitol Aggregates, Inc.*, 408 S.W.2d at 923) (other citations omitted). "When an injured worker settles a case without reimbursing a compensation carrier, everyone involved is liable to the carrier for conversion—the plaintiffs, the plaintiffs' attorney, and the defendants." *Id.* at 38. (citations omitted).

A carrier's claim for reimbursement is treated as an affirmative claim, and "[t]here is no requirement that a carrier plead the precise amount of reimbursement it seeks." *Id.* at 37. "[L]itigants cannot be put to trial summarily." *Id.* (citing Tex. R. Civ. P. 245). Texas Rule of Civil Procedure 245 provides that a trial court:

> may set contested cases on written request of any party, or on the court's own motion, with reasonable notice of not less than forty-five days to the parties of a first setting for trial, or by agreement of the parties; provided, however, that when a case previously has been set for

trial, the Court may reset said contested case to a later date on any reasonable notice to the parties or by agreement of the parties.

Tex. R. Civ. P. 245. "The notice required by Rule 245 'is mandatory and involves the constitutionally protected right of due process.'" *In re B.C.*, 579 S.W.3d 432, 435 (Tex. App.—Corpus Christi–Edinburg 2019), *aff'd*, 592 S.W.3d 133 (Tex. 2019) (quoting *In re I.L.S.*, 339 S.W.3d 156, 159 (Tex. App.—Dallas 2011, no pet.)). Importantly, "a lack of notice violates basic principles of due process." *Highsmith v. Highsmith*, 587 S.W.3d 771, 778 (Tex. 2019) (citation omitted). "Due process demands that a party be afforded 'an opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995)).

The Texas Rules of Civil Procedure provide different procedural vehicles that may be used to resolve the parties' dispute. *See In re Park Mem'l Condo. Ass'n, Inc.*, 322 S.W.3d 447, 451 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding). "Those options include, among other things, the following: trial on the merits, either to a jury or the bench, motions for summary judgment, or agreements by the parties to compromise some or all of a party's claims." *Id.* (citing Tex. R. Civ. P. 11 (agreements between parties), 166a (summary judgment), 216 (jury trial), 262 (bench trial)). "Except by these methods, however, a trial court cannot resolve a disputed issue." *Id.* (citing *Unitrust, Inc. v. Jet Fleet Corp.*, 673 S.W.2d 619, 623 (Tex. App.—Dallas 1984, no writ) ("A dismissal, when issues are disputed, without

32

affording the parties a right to a full trial on the merits, should only be invoked if the summary-judgment procedure is invoked or if the parties come to an agreement on the issues.")). Parties cannot resolve disputed fact issues "'simply on motion and hearing' without any of the procedural protections provided by a trial on the merits before a factfinder." *Aguilar v. Aguilar*, No. 04-24-00161-CV, 2025 WL 1512197, at *5 (Tex. App.—San Antonio May 28, 2025, no pet.) (mem. op.) (quoting *Gamboa v. Gamboa*, 383 S.W.3d 263, 269 (Tex. App.—San Antonio 2012, no pet.) (discussing in context of Rule 11 enforcement in divorce proceeding)).

Since claimants should already know how much they have received in benefits, and a carrier is entitled to reimbursement for medical payments without proof they were reasonable and necessary, "a carrier's subrogation claim should hardly ever be contested." *Ledbetter*, 251 S.W.3d at 37. That said, on the rare occasion a claimant wants to contest the amounts, "they could not insist on a summary trial." *Id.* A carrier must prove its case at trial. *See id.*; *Lege v. Jones*, 919 S.W.2d 870, 874 (Tex. App.—Houston [14th Dist.] 1996, no writ). A settlement hearing is not a trial. *See Ledbetter*, 251 S.W.3d at 37. Likewise, the failure to hold a jury trial on factual issues is harmful error. *See Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 665 (Tex. 1996).

**Application**

Here, the record reflects a protracted dispute among multiple parties involving serious injuries, fatalities, and workers' compensation benefits being paid to the Jones Plaintiffs and on behalf of Jones. We realize the need to bring this decades-long litigation to an end, but we cannot do so by permitting the trial court to summarily adjudicate the right of the workers' compensation carrier seeking reimbursement. *See Ledbetter*, 251 S.W.3d at 36–37. That is what happened here.

The statutory scheme governing reimbursement to workers' compensation carriers for benefits paid for a compensable injury is clear: the carrier has the right to "first money." *Id.* at 36; Tex. Lab. Code Ann. § 417.002(a). Unlike most claimants, the Jones Plaintiffs have decided to contest the subrogation claim amounts, which they may do. *See Ledbetter*, 251 S.W.3d at 36. Even so, they cannot have the adjudicated fact issue of the reimbursement amounts for medical benefits decided "'simply on motion and hearing' without any of the procedural protections provided by a trial on the merits before a factfinder." *Aguilar*, 2025 WL 1512197, at *5 (quoting *Gamboa*, 383 S.W.3d at 269). In other words, ETEIA "cannot be put to trial summarily[,]" and the Jones Plaintiffs "could not insist on a summary trial" simply because they decided they wanted to contest the reimbursement amounts ETEIA paid for medical benefits. *See Ledbetter*, 251 S.W.3d at 36 (citing Tex. R. Civ. P. 245).

The trial court cannot adjudicate disputed fact issues in any way it sees fit. It may do so by the parties' settlement agreement, a bench trial, a jury trial, or a motion for summary judgment, which adhere to certain rules of procedure and evidence. *See In re Park Mem'l Condo. Ass'n, Inc.*, 322 S.W.3d at 451; *see also* Tex. R. Civ. P. 11 (agreements between parties), 166a (summary judgment), 216 (jury trial), 262 (bench trial). The record shows that the Jones Plaintiffs failed to provide the requisite notice required for a trial under Rule 245. *See* Tex. R. Civ. P. 245. They also did not move for summary judgment, as the governing rule provides procedural protections by outlining the time of filing evidence, responses, and notice requirements. *See id.* 166a. Rather than providing the requisite notice required by rules 166a or 245, the Jones Plaintiffs provided less than a week's notice. *See id.* 166a, 245. Further, neither the Motion to Approve nor Motion to Determine Lien Amounts indicated or alerted ETEIA that the Jones Plaintiffs were contesting the reimbursement amounts for medical benefits paid by the carrier. Instead, the Motion to Determine Lien Amounts asked that the carrier appear and present evidence, which ETEIA did when it filed Blackshear's Affidavit and attached the Payment Detail Report for the claim. The record reflects that the Jones Plaintiffs filed no evidence before the hearing, and they concede no evidence was introduced at the hearing. Despite this, the trial court entered multiple orders disregarding ETEIA's evidence and permitting the Jones

35

Plaintiffs to submit evidence after the fact, which at least in part, substantiates ETEIA's claim for the medical reimbursement benefits paid on behalf of Jones.[8]

We briefly turn to the Jones Plaintiffs' claims that they did not know "what the amount was" for the subrogation lien and reimbursement amounts due to the passage of time and complicated procedural history. They point to ETEIA's failure to state amounts in the affidavits it filed before November 2023, yet ETEIA was not required to "plead the precise amount of reimbursement it seeks." *Ledbetter*, 251 S.W.3d at 37. The Jones Plaintiffs themselves knew the amounts before the hearing, given Blackshear's Affidavit and the Payment Detail Report showing the amounts paid. Additionally, the same amounts stated in Blackshear's Affidavit were pleaded in ETEIA's Second Amended Petition in Intervention, which had been on file since 2021. The fact that they signed a Settlement Agreement and their previous attorney signed an Agreed Final Judgment in the Orange County Lawsuit based on that Agreement specifying ETEIA reimbursed $350,000.00 to TRS-ActiveCare for medical bills it paid because of the compensable injury undermines this assertion. *See id.* (noting claimants should know the amounts of benefits paid).

---

[8] Indeed, the evidence filed after the fact included Blackshear's affidavit with the Payment Detail Report, a business records affidavit from the Jones Plaintiffs' counsel in the Orange County Lawsuit, the Settlement Agreement in the Orange County Lawsuit, and Agreed Judgment in that suit. The remaining evidence filed consisted of the Jones Plaintiffs' attorneys trying to explain why they should be entitled to a fee from the subrogation lien amount owed to the carrier, even though ETEIA was represented by its own attorneys.

We hold the trial court abused its discretion by misapplying the law to the facts of this case when it summarily adjudicated ETEIA's subrogation claim during a settlement hearing and effectively denied its right to "first money" reimbursement of medical benefits paid without a trial on the merits or summary-judgment proceedings. *See id.*; *In re Park Mem'l Condo. Ass'n, Inc.*, 322 S.W.3d at 451; *see also* Tex. R. Civ. P. 166a, 216, 245, 262. Accordingly, we sustain issues two and three. "[T]he remedy for a denial of due process is due process," so rather than rendition, remand for an adjudication of the merits of ETEIA's claims by trial, summary-judgment, or other method allowable under the rules, is the appropriate remedy. *See Mosley v. Tex. Health & Hum. Servs. Comm'n*, 593 S.W.3d 250, 268 (Tex. 2019); *Than*, 901 S.W.2d at 933; *see also In re Park Mem'l Condo. Ass'n, Inc.*, 322 S.W.3d at 451. Given our resolution of issues two and three, we need not address ETEIA's remaining issues. *See* Tex. R. App. P. 47.1.

Courts have held that generally those who received the funds unlawfully (the plaintiffs and their attorney) should disgorge them rather than making the tortfeasors pay twice. *See Ledbetter*, 251 S.W.3d at 39. The parties have not asked us to set aside the Jones Plaintiffs' settlement with Toyota, and we do not hold it is necessary. We are confident the trial court can protect both the carrier's and the Jones Plaintiffs' interests without undoing the settlement entirely. *See id.*

**CONCLUSION**

Having determined that the trial court summarily and erroneously resolved the merits of ETEIA's subrogation claim and reimbursement amount for benefits paid without a jury trial, bench trial, or motions for summary judgment, we reverse the following orders entered by the trial court: (1) Order on Motion to Determine Amounts of Workers' Compensation Liens, signed November 20, 2023; (2) Amended Order on Motion to Determine Amounts of Workers' Compensation Liens, signed November 27, 2023; (3) Amended Order on Motion to Determine Amounts of Workers' Compensation Liens, signed January 22, 2024; and (4) Severance Order pertaining to ETEIA's claims, signed March 7, 2024. We also vacate the trial court's Findings of Fact and Conclusions of Law, signed April 25, 2024, as they were filed to explain the Orders we have already determined were improperly entered. We remand this matter for proceedings consistent with this opinion.

REVERSED AND REMANDED.

W. SCOTT GOLEMON
Chief Justice

Submitted on February 10, 2026
Opinion Delivered May 28, 2026

Before Golemon, C.J., Wright and Chambers, JJ.

38